JOHN DIVERSEY *v.* BYRON M. SMITH

and

THOMAS M. BURKETT *et al. v.* JOHN PLANKINTON *et al.*

*Filed at Ottawa June 21, 1882.*

1. ACTION—*whether it survives after defendant's death.* An action to recover a statutory penalty does not survive the death of the defendant, and a writ of error from the Appellate Court to reverse a judgment in favor of the defendant against his executors is properly dismissed.

2. STOCKHOLDERS—*individual liability—as to the mode in which it may be fixed—under constitution of 1848.* Section 2, art. 10, of the constitution of 1848, not having directed any specific way in which "dues from corporations not possessing banking powers or privileges, shall be secured," and allowing it to be "by such individual liabilities of the corporators as may be prescribed by law," any means provided by the General Assembly for that purpose would seem to meet that requirement, and should the General Assembly determine to secure such dues by individual liabilities of the corporators, there is no restriction or limitation as to the manner in which it shall be done. It may therefore secure such dues by making the corporators liable individually to penalties, as a reasonable and effective mode.

3. SAME—*reservation of power in charter, as limiting the mode of fixing liability of stockholders.* A reservation in an amendment to the charter of an insurance company, of the right of the legislature to bring the corporation under the operation of general laws, does not bind the legislature to enact any specific law, and does not operate as a contract with the stockholders that they shall be subjected to any specific additional primary liability on their contracts of subscription. It only gives a discretion to enact such gen-

eral law as the legislature in its discretion deems best for the public good, and such laws may be penal in their character as to the liability of stockholders.

4.  SAME—*as to the nature of the liability of stockholders, whether arising as a penalty, or upon contract.*  Where a statute relating to a corporation declares that it shall not transact business until certain preliminary things have been done, and if it does so transact business in violation of such provision the trustees and corporators shall be liable to the creditors to a given amount, the liability so imposed is a penalty for violating the law, or allowing it to be done.  But where the statute declares the corporation may transact business and the stockholders shall be liable for its debts contracted, either absolutely or until some subsequent thing shall be done, their liability is primary, and is based upon a contract.  In the other case it is based upon a tort.

5.  SAME—*insurance companies—requirements of the general law of 1869, as preliminary to right to transact business.*  Under the general Insurance law of 1869 an insurance company has no authority to commence business and issue policies until after the Auditor of Public Accounts shall have delivered to it a certified copy of its charter and of the certificates required to be filed with the Auditor, and the company shall have filed them in the office of the proper county clerk for record, and any attempt on its part to do so before this is done is in direct violation of the statute.

6.  SAME—*nature, character and extent of liability of stockholders in insurance companies—under law of 1869.*  The individual liability of a stockholder, under section 16 of the act in force July 1, 1869, entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois," is a penalty prescribed for transacting business before the company has complied with the requirements of that act, by having all its stock paid in, and receiving from the Auditor a certified copy of its charter and of the certificates required to be filed, and is in the nature of a punishment for the violation of the provisions of such act.  The act creates no primary liability by way of contract between the stockholder and creditors of the corporation for the debts thereof, and hence the right of action given does not survive the death of the stockholder.

7.  Although an insurance company is prohibited from commencing business and issuing policies before certain things are done which are essential to constitute a license or authority, if in defiance of such prohibition it should commence business and issue policies, as between it and the other contracting party, who has performed his part of the contract and paid his money, the company will be estopped to deny its authority to make the contract, and it will be liable in an action thereon at the suit of the creditor; but such debts are not made by the statute the debts or liabilities of the trustees or corporators.  The latter are not made liable jointly and severally with the company.  Their liability to the creditors is not for their indebtedness, but for that of the company, as a penalty for allowing it to do business in violation of law.

8. The individual liability of a trustee or corporator of an insurance company, under the act of 1869, to creditors of the company, when it has not complied with the law, does not depend upon the fact the creditor has sustained any actual loss or injury by the failure of the trustees or corporators. The creditor is only required to show the company owes him, and that the whole amount of the capital of the company has not been paid in, and a certificate thereof recorded, as provided by the act.

9. PENAL STATUTE—*defined.* A penal statute is an act by which a forfeiture is imposed for transgressing the provisions of the act. It may also be remedial in one part, and penal in another. The effect, and not the form, of the statute is to be considered, and if its object is clearly to inflict a punishment on a party for doing what is prohibited, or failing to do what is commanded to be done, it is penal in its character, and the circumstance that, in punishing, a remedy is likewise afforded to those having an interest in the observance of the statute, is unimportant.

10. STATUTE—*construction—when affirmative words operate negatively.* It is a maxim generally true, that if an affirmative statute, which is introductive of a new law, directs a thing to be done in a certain manner, that thing shall not be done in any other manner, even though there be no negative words. Hence, a provision that certain things shall be done to constitute a license or authority, is equivalent to an express prohibition against the license or authority unless those things shall be done.

APPEALS from the Appellate Court for the First District;—heard in that court on writs of error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The first of these actions, *Diversey* v. *Smith,* was an action of debt, brought by John Diversey, for use, etc., a creditor of the Germania Insurance Company, a corporation organized under an act of the legislature of this State for the business of fire insurance, against Solomon A. Smith, appellee's testator, who was a stockholder in the corporation, to enforce his individual liability as a corporator under the general laws of the State. The defendant demurred to the plaintiff's declaration, and the Superior Court of Cook county sustained the demurrer. The appellant appealed to the Appellate Court, and during the pendency of that appeal the defendant died. His death was suggested, and on motion a *scire facias* was issued to the appellee, the executor of the last will of

the defendant. The Appellate Court, on appellee's motion, dismissed the appeal, on the ground that the cause of action did not survive the defendant's death against his legal representatives. From that order appellant appealed to this court.

Messrs. SHUFELDT & WESTOVER, for the appellant, made the following among other points:

The constitution of 1848, under which the charter was granted, required that dues from such corporations should be "secured by such individual liabilities of the corporators, or other means," as might be prescribed by law. By an amendment to the charter, accepted prior to the passage of the general law of 1869, a right was reserved by the State to bind it in the future by general law. These provisions created each a compact between the company and the State, and the subsequent general law securing creditors by a limited liability of stockholders was but carrying these compacts into effect, and is not a penalty, unless made so by its terms. *Arenz* v. *Weir*, 89 Ill. 15; *Union Iron Co.* v. *Pierce*, 4 Biss. 327; *Butler* v. *Walker*, 80 Ill. 345; *Gulliver* v. *Rœlle*, 100 id. 141; *Tomlinson* v. *Jessup*, 15 Wall. 457; *Miller* v. *State*, 15 id. 478; *Sherman* v. *Smith*, 1 Black, 587; *McLaren* v. *Pennington*, 1 Paige, 102; *In re Reciprocity Bank*, 22 N. Y. 9; *In re Oliver Lee's Bank*, 21 id. 9; *Bailey* v. *Hollister*, 12 id. 112; *Stanley* v. *Stanley*, 26 Maine, 191.

The language of the statute, that the corporators "shall be severally liable for all debts," etc., "to the amount by him or them subscribed, until the whole amount of the capital of such company shall have been paid in, and a certificate thereof recorded," imposes no penalty, but defines an original liability, as required by the constitution. *Aspinwall* v. *Sacchi*, 57 N. Y. 331; *Bird* v. *Hayden*, 1 Robertson, 383; *Corning* v. *McCullough*, 1 Comst. 47; *Coleman* v. *White*, 14 Wis. 762; *Culver* v. *Third Nat. Bank*, 64 Ill. 529; *Fuller* v. *Ledden*, 87 id. 310; *Harger* v. *McCullough*, 2 Denio, 123; *Norris* v.

*Wrenschall,* 34 Md. 492; *Paine* v. *Stewart,* 33 Conn. 516; *Young* v. *Rosenbaum,* 29 Cal. 646.

A statutory penalty is imposed by way of a fine or punishment for the non-performance of a duty imposed by statute, or for the performance of an act forbidden by statute. *Cable* v. *McCune,* 26 Mo. 371; *Provident Savings Inst.* v. *Skating Rink,* 52 id. 552; *Gregory* v. *German Bank of Denver,* 33 Col. 332; *Union Iron Co.* v. *Pierce,* 4 Biss. 327; *Derrickson* v. *Smith,* 27 N. J. 166; *Craw* v. *Easterly,* 4 Lans. 513; *Kelton* v. *Phillips,* 3 Mass. 361; *Franklin Glass Co.* v. *White,* 14 id. 286; *Ripley* v. *Sampson,* 10 Pick. 370; *Stedman* v. *Evelith,* 6 Metc. 119; *Bolen* v. *Crosby,* 49 N. Y. 183; *Whitney Arms Co.* v. *Barlow,* 41 N. Y. St. 220; *Jones* v. *Barlow,* 38 id. 142; *Nemmons* v. *Tappan,* 2 Sweeney, 652; *Strong* v. *Sproul,* 4 Daly, 326; *Barnett* v. *A. & P. R. R. Co.* 68 Mo. 56; *Nassau Bank* v. *Brown,* 30 N. J. Eq. 478; *Sturges* v. *Burton,* 8 Ohio St. 215; *Irvine* v. *McKeon,* 23 Cal. 472; *Lawler* v. *Burt,* 7 Ohio St. 341; *First Nat. Bank* v. *Price,* 33 Md. 487; *Garrison* v. *Howe,* 17 N. Y. 458; *Andrews* v. *Murray,* 33 Barb. 354; *Shaler* v. *Bliss,* 34 id. 309; *Boughton* v. *Otis,* 21 N. Y. 261; *Squire* v. *Brown,* 22 How. 45; *Halsey* v. *McLean,* 12 Allen, 438; *Bank* v. *Commonwealth,* 26 Pa. 451; *Kritzer* v. *Woodson,* 19 Mo. 327; *Hill* v. *Frazier,* 22 Pa. 230; *Norris* v. *Wrenschall,* 34 Md. 492; *Cameron* v. *Seamen,* 69 N. Y. 396; *Steam Engine Co.* v. *Hubbard,* 101 U. S. 188; *Merchants' Bank* v. *Bliss,* 35 N. Y. 412; *Corning* v. *McCullough,* 1 Comst. 47.

· In general, liabilities of this nature, or kindred liabilities, have been held to survive the death of the stockholder. *Bailey* v. *Hollister,* 12 N. Y. 112; *Burr* v. *Wilcox,* 22 id. 551; *Diven* v. *Duncan,* 41 Barb. 520; *Diven* v. *Lee,* 36 id. 302.

There is a clear distinction between a liability that is primary, and therefore *ex contractu,* and one for a wrong doing and in tort. As an illustration of the former, see *Corning* v. *McCullough,* 1 Comst. 47; *Allen* v. *Sewall,* 2 Wend. 338;

*Moss* v. *Oakley*, 2 Hill, 265; *Bailey* v. *Blancker*, 3 id. 188; *Harger* v. *McCullough*, 2 Denio, 119; *Ex parte Van Riper*, 20 Wend. 614.   In illustration of such as are in tort, see *Garrison* v. *Hare*, 17 N. Y. 458; *Andrews* v. *Murray*, 33 Barb. 354; *Shaler* v. *Bliss*, 34 id. 309; *Boughton* v. *Otis*, 21 N. Y. 261; *Squire* v. *Brown*, 22 How. 45; *Halsey* v. *McLean*, 12 Allen, 438; *Lawler* v. *Burt*, 7 Ohio St. 341; *Derrickson* v. *Smith*, 27 N. J. 166; *Bank* v. *Commonwealth*, 26 Pa. 451; *Kritzer* v. *Woodson*, 19 Mo. 327; *Hill* v. *Frazier*, 22 Pa. 230.

Mr. JOHN S. COOPER, for the appellee Smith:

The liability imposed upon stockholders of insurance companies, by section 16 of the act of 1869, is penal in its character, and can be sustained only on that ground.   *Weidenger* v. *Spruance*, 101 Ill. 278; *Gulliver* v. *Rœlle*, 100 id. 141; *Gridley* v. *Barnes et al.* 103 id. 211; *Merchants' Bank of New Haven* v. *Bliss et al.* 35 N. Y. 412; *Losee et al.* v. *Bullard*, 79 id. 404; *First National Bank* v. *Price et al.* 33 Md. 487; *Derrickson* v. *Smith*, 27 N. J. L. 166; *Cairo and St. Louis R. R. Co.* v. *Warrington*, 92 Ill. 157; *Cable* v. *McCune*, 26 Mo. 380; *Halsey* v. *McLean*, 12 Allen, 438; *Sturges* v. *Burton*, 8 Ohio St. 215; *Lawler* v. *Burt*, 7 id. 340; *Moies* v. *Sprague, Admr.* 9 R. I; *Steam Engine Co.* v. *Hubbard*, 101 U. S. (11 Otto,) 188; *Richardson* v. *Aikin*, 87 Ill. 138.

Mr. JOHN H. THOMPSON, for the appellees Plankinton and others:

A writ of error against an executor will be abated when the cause of action does not survive.   *Barrett et ux.* v. *Gaston, Exr.* Breese, 255.

A provision of law imposing an individual liability for a corporate debt, is to be construed strictly.   *Gray* v. *Coffin et al.* 9 Cush. 199; *Moyer* v. *Pennsylvania S. Co.* 71 Pa. St. 293; *Appeal of Means*, 85 id. 75.

The legislature may impose a reasonable penalty for the non-performance of a legal duty, although the duty may have been declared, and its performance enjoined, by the principles of the common law or by a prior statute. *Chicago, Rock Island and Pacific R. R. Co.* v. *Reidy,* 66 Ill. 43; *Chicago and St. Louis R. R. Co.* v. *Warrington,* 92 id. 157; *Burnett* v. *Chicago and Pacific R. R. Co.* 68 Mo. 56.

The liability imposed by sec. 16 of the general Insurance act of 1869, is a statutory penalty. *Weidenger* v. *Spruance,* 101 Ill. 278; *Bank* v. *Price et al.* 33 Md. 487; *Cameron* v. *Seaman,* 69 N. Y. 396; *Derrickson* v. *Smith,* 27 N. J. L. 166; *Steam Engine Co.* v. *Hubbard,* 101 U. S. 188; *Kritzer* v. *Woodson,* 19 Mo. 327; *Cable* v. *McCune,* 26 id. 371; *Hill* v. *Frazier,* 22 Pa. St. 320; *Harrisburg Bank* v. *Commonwealth,* 26 id. 451; *Lawler* v. *Burt,* 7 Ohio St. 341; *Sturges* v. *Burton,* 8 id. 215; *Halsey* v. *McLean,* 12 Allen, 438.

When a statute, directly or indirectly, requires a company, its officers or stockholders, to do anything, or prohibits the company or its officers from doing a thing, and imposes a liability for its violation upon either the company, its officers or stockholders, such statute is of a penal character. But when the statute imposes a liability on the stockholders for some benefit to the public, or to some class, and contains no command to do or not to do anything, it is not penal, but creates a primary liability *ex contractu* upon the stockholder.

Mr. Justice Scholfield delivered the opinion of the Court:

In these cases the facts are, in all material respects, similar, and the single question presented by the record, and discussed in arguments of counsel, is common to both. In each the action is debt, upon a policy of insurance issued by a company which was organized under a special charter enacted by the General Assembly long prior to July 1, 1869, against a stockholder of the company, who had become such by making, and performing on his part, a contract of sub-

scription for stock, prior, also, to July 1, 1869. Judgments were rendered in the Superior Court of Cook county for the defendants. From those judgments appeals were taken to the Appellate Court for the First District, and while the appeals were there pending, and before argument, the defendants died, testate. The deaths of the defendants were suggested, and thereupon writs of error were sued out and served, making their executors parties. On motion of the executors, the Appellate Court dismissed the writs of error, and gave judgments for costs. To reverse those judgments the present appeals are prosecuted.

For convenience we shall treat the cases as one, and speak of the parties in the singular number only.

If the action is for a statutory penalty, it does not survive the death of the testator, and the writ was properly dismissed, as is conceded by counsel for appellant. 1 Chitty's Pleadings, (7th Am. ed.) 103, *104; *Hambly* v. *Trott*, Cowp. 372; *Barret et ux.* v. *Gaston*, Breese, 255. The question, therefore, is, whether the action is on a contract or for a statutory penalty.

We do not think it needful at this time to discuss whether it was competent for the General Assembly to impose a primary double liability on stockholders in insurance companies, by a law enacted subsequent to the making and performing, on their part, of their contracts of subscription, since, in our opinion, no such law has been enacted, and it will be quite time enough to consider that question when it shall be properly before us for determination. Sec. 2 of art. 10 of the constitution of 1848, directs no specific way in which "dues from corporations not possessing banking powers or privileges shall be secured." It allows it to be "by such individual liabilities of the corporators, or other means, as may be prescribed by law." Hence any means provided by the General Assembly for that purpose would seem to meet the requirement, and should the General Assembly determine to secure

such dues by individual liabilities of the corporators, there is
no restriction or limitation as to the manner in which it shall
be done.   It is therefore impossible to say that it may not
be by making the corporators liable, individually, to penal-
ties, because it is manifest this might be a reasonable mode,
and a very effective one, too, of securing such dues.

We also think it quite obvious that the reservation in the
amendment to the charter of the insurance company of the
right of the General Assembly to bring the corporation under
the operation of general laws, bound the General Assembly
to enact no specific law, and did not operate as a contract
with the stockholders that they should be subjected to any
specific additional primary liability on their contracts of sub-
scription.   Had a law imposing additional primary liability
been enacted, it would have been pertinent to have inquired
whether it was within the power reserved to the General
Assembly; but no one can reasonably claim that the mere
reservation of power to enact a general law in regard to
insurance companies, did of itself constitute such a law.   At
most it could only be said the General Assembly reserved the
right, to be exercised in its discretion, to enact such general
laws in regard to insurance companies as, in the opinion of
its members, the public welfare should require.   We are
unable to conceive of a valid reason why such laws might
not be penal in their character.

In our opinion, therefore, necessarily, neither the constitu-
tional provision nor the reservation in the amendment to the
insurance charter referred to, can furnish any aid in deter-
mining whether the present action is on a contract or for a
statutory penalty.   What has been enacted must be deter-
mined by an examination of the act itself, the power to so
enact not being now in question.

The action is brought under the provisions of "An act to
incorporate and to govern fire, marine and inland navigation
insurance companies doing business in the State of Illinois,"

in force July 1, 1869, (Rev. Stat. 1874, p. 591,) and the portions of the several sections necessary to a solution of the question before us are as follows: The 1st section authorizes any number of persons, not less than thirteen, to associate and form an incorporated company for the purpose of making insurance, etc. The 3d section requires that "such persons shall file in the office of the Auditor of Public Accounts a declaration, signed by all the corporators, expressing their intention to form a company for the purpose of transacting the business of insurance, as expressed in the 1st section of this act, which declaration shall also comprise a copy of the charter proposed to be adopted by them, and shall publish a notice," etc. The 7th· section provides that "it shall and may be lawful for the individuals associated for the purpose of organizing any company under this act, after having published the notice and filed the declaration and charter, as required by the 3d section of this act, and also on filing in the office of the Auditor of Public · Accounts proof of such publication, * * * to open books for subscription to the capital stock of the company so intended to be organized, and to keep the same open until the full amount specified in the charter is subscribed," etc. The 8th section directs how its capital shall be invested. The 9th section provides what real estate may be owned. In the 10th section it is enacted that "the charter and proof of publication herein required to be filed by every such company shall be examined by the Attorney General, and if found conformable to this act, and not inconsistent with the constitution or laws of this State, shall be certified by him to the Auditor of Public Accounts, who shall thereupon cause an examination to be made, either by himself or by three disinterested persons specially appointed by him for that purpose, who shall certify, under oath, that the capital herein required of the company named in the charter, according to the nature of the business proposed to be transacted by such

company, has been paid in, and is possessed by it in money, or in such stocks and bonds and mortgages as are required by the 8th section of this act; * * * and the corporators and officers of such company shall be required to certify, under oath, that the capital exhibited to those persons is *bona fide* property of the company. Such certificate shall be filed in the office of the said Auditor, who shall thereupon deliver to such company a certified copy of the charter and of said certificates, which, on being filed in the office of the clerk of the county where the company is to be located, shall be their authority to commence business and issue policies; and such certified copy of the charter and of said certificates may be used in evidence for or against said company."

It thus conclusively appears that until after the Auditor of Public Accounts shall have delivered to the company the certified copy of the charter and certificates, and the company shall have filed them in the office of the proper county clerk, there is no authority whatever for the company to commence business and issue policies, and any attempt on its part to do so before, is in direct violation of the statute, for a provision that certain things shall be done to constitute a license or authority, is equivalent to an express prohibition against the license or authority unless those things shall be done. "It is," says Dwarris, "a maxim, generally true, that if an affirmative statute, which is introductive of a new law, directs a thing to be done in a *certain manner*, that thing shall not, even although there are no negative words, be done in any other manner." Potter's Dwarris on Statutes, 72.

The command of the law then is, business shall not be commenced, and policies issued, unless those things are done which are required as a license or authority to commence business and issue policies; and to compel obedience to this command, the 16th section imposes a punishment for its violation, namely: "The trustees and corporators of any company organized under this act shall be severally liable

for all debts or responsibilities of such company to the amount by him or them subscribed, until the whole amount of the capital of such company shall have been paid in, and a certificate thereof recorded, as hereinafter provided." * * * "Dues" from such corporations "are secured as prescribed by law," in the requirement that the capital of the company "has been paid in, and is possessed by it in money, or in such stocks and bonds and mortgages as are required by the 8th section of this act," before they are allowed to commence business, and in the enforcement of this requirement by penalties of individual liability upon the trustees and corporators. Still, although the company is thus prohibited from commencing business and issuing policies before those things are done which are essential to constitute a license or authority, if, in defiance of this prohibition, it should commence business or issue policies, as between it and those with whom it should assume to contract, it would, after the other party had performed his part of the contract and the company had received the benefit of it, be estopped to deny its authority to make the contract, and would be liable thereon in an action at the suit of the creditor. *Bradley* v. *Ballard*, 55 Ill. 413; *Darst* v. *Gale et al.* 83 id. 136; *Peoria and Springfield R. R. Co.* v. *Thompson, ante,* 187. See, also, Field on Corporations, secs. 259, 260, 261; 2 Parsons on Contracts, 790. Such debts or responsibilities are, therefore, legally the debts or responsibilities of the company, and it is to be noted the 16th section does not provide the debts or responsibilities thus contracted shall be deemed and treated as the debts or responsibilities of the trustees or corporators, instead of the company, or jointly and severally of the trustees and corporators and company, but expressly designates them as "the debts or responsibilities of such company." The company is treated as primarily liable, and the trustees and corporators are held liable not because of *their* debt or responsibility, or of *their*

*and the company's* debt or responsibility, but solely on account of the debt or responsibility of the company.

At common law a trustee or corporator is not liable for a debt contracted by a corporation, and if he shall be made primarily liable for such debt by statute, it must be because the statute in some way makes him a contractor in such case. It must be within contemplation of law, at least, that the company can contract on behalf of trustees and corporators, or on behalf of itself and them. To create such a relation, in the absence of an express contract, the authority would necessarily have to affirmatively appear in the statute. But the statute under consideration, instead of containing language to that effect, prohibits the making of all contracts. It imposes the liability upon the trustees and corporators, not because the company was authorized to contract in their names or on their behalf, or so as to otherwise bind them, but because it prohibited the commencing of business and issuing of policies, and the trustees and corporators, in violation of their duty, caused or permitted business to be commenced and policies to be issued. Sedgwick says: "Penal statutes are acts by which a forfeiture is imposed for transgressing the provisions of the act." He moreover adds: "A penal law may also be remedial, and a statute may be remedial in one part and penal in another." (Stat. and Const. Law, 41.) In Potter's Dwarris on Statutes, 74, it is said: "A penal statute is one which imposes a forfeiture or penalty for transgressing its provisions or for doing a thing prohibited." It is the effect, not the form, of the statute that is to be considered, and when its object is clearly to inflict a punishment on a party for violating it—*i. e.*, doing what is prohibited, or failing to do what is commanded to be done,— it is penal in its character, and the circumstance that in punishing, remedy is likewise afforded to those having an interest in the observance of the statute, is unimportant.

Accepting it as settled that the liability imposed is not a primary liability, a significant, and, to us, conclusive, fact to be taken into consideration in the character of liability imposed by the 16th section is, that the plaintiff's right of recovery is totally unaffected by any actual loss or injury he may have sustained by the failure or neglect of the trustees or the corporators. Although he might collect the debt from the corporation, this is no defence. Whether all the capital, or all but a nominal sum, or whether but an insignificant amount of the capital, has been collected and paid in, would obviously be unimportant inquiries. He is only required to show that he is a creditor of the company—that the defendant is a trustee or corporator, and that the whole amount of the capital of such company has not been paid in, and a certificate thereof recorded, as provided in the 10th section of the act.

Counsel for appellant refer to and rely upon *Corning* v. *McCullough,* 1 Comst. 47, *Coleman* v. *White,* 14 Wis. 762, *Harger* v. *McCullough,* 2 Denio, 123, *Paine* v. *Stewart,* 33 Conn. 516, *Young* v. *Rosenbaum,* 39 Cal. 646, *Fuller* v. *Ledden,* 87 Ill. 310, *Aspinwall* v. *Sacchi,* 57 N. Y. 331, *Norris* v. *Wrenschall,* 34 Md. 492, *Culver* v. *Third National Bank,* 64 Ill. 529, *Steele* v. *Dunn,* 65 id. 298, and *Corwith* v. *Culver,* 69 id. 502. These cases are all plainly distinguishable from the present case.

In *Corning* v. *McCullough,* the statute provided, in one of its sections, (sec. 9,) "that the stockholders of the corporation shall be jointly and severally personally liable for the payment of all debts and demands contracted by the corporation, and that any person having any demand against such corporation may sue any stockholder or director in any court having cognizance thereof, and recover the same, with costs." The liability was thus unquestionably primary, and bound the stockholders, without limitation, to the payment of all corporate debts. The court, in speaking of it, said: "The

personal liability of the stockholder to creditors under this charter, for the debts of the company, is an element of the incorporation which wholly excludes all claim of any stockholder to treat those debts as debts of the corporate body, solely, which he did not contract and is not bound to pay. The stockholders all stand under this act of incorporation on the same ground, and under the same responsibility, as respects creditors, as they would if unincorporated have stood." There was lawful authority to contract debts, and by the act of becoming a stockholder the defendant and the other stockholders became jointly and severally liable with the corporation for the debts. *Harger* v. *McCullough* was under the same charter, and deserves no further notice.

In *Paine* v. *Stewart*, the liability was of the same character as that imposed in *Corning* v. *McCullough*.

In *Coleman* v. *White*, the liability was also of like character. The court there said: "We are of opinion that the liability is primary and absolute, and attaches the moment the debt is contracted by the bank; that it is a liability of all the stockholders to all the creditors, on the principle of co-partnership, the stockholders standing on substantially the same footing as though they were partners or unincorporated association, save only that the responsibility of each is limited to a sum equal to his share or shares of stock. Subject to this limitation, they are answerable as original or principal debtors, and their liability more nearly resembles that of co-partners than any other to which it can be compared."

*Young* v. *Rosenbaum* belongs to the same class of cases. The liability there was primary and absolute. The corporation was lawfully authorized to contract (not prohibited, as here, from contracting,) debts, for which the stockholder was made primarily liable. The court said: "When a debt accrues against the corporation it also accrues against the stockholders, and they remain such debtors until the debt is paid or satisfied."

In *Norris* v. *Wrenschall*, the court distinguishes the case from *Bank of Plymouth* v. *Price et al.* 33 Md. 487, which we shall hereafter refer to, and says: "The section we are now considering not only does not forbid the contracting of debts before the capital stock is paid in, but allows it to be done, on condition that those who are stockholders at the time shall become severally and individually liable therefor."

In *Fuller* v. *Ledden*, the third section of the bank charter expressly provided, that "each stockholder shall be liable to double the amount of stock held or owned by him, and for three months after giving notice of transfer." There was affirmative power in the corporation to contract debts, and a primary liability therefor was imposed on the stockholder.

*Culver* v. *Third National Bank, Steele* v. *Dunn,* and *Corwith* v. *Culver,* were actions brought under the 9th section of "An act to authorize the formation of corporations for manufacturing, mechanical or chemical purposes," (Session Laws of 1857, p. 163,) which provides: "All the stockholders of every such company shall be severally individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company prior to the time when the whole amount of its capital stock shall have been paid in, and a certificate thereof made and filed, as hereinafter required." But section 1 of that act provides, that "any three or more persons who may desire to form a company for the purpose of carrying on any kind of manufacturing * * * business, may make, sign and acknowledge, * * * and file in the office of the clerk of the circuit court, * * * and also in the office of the Secretary of State, a certificate in writing, in which shall be stated the corporate name of the said company, the object for which it is formed, the amount of the capital stock thereof, the term of its existence, the number of shares of which the said stock shall consist, the number of directors, and the names of the persons who shall

be directors," etc. Section 2 provides, the capital stock shall not be less than $10,000, nor more than $500,000, and that it shall be paid in within four years after the date of the license of the incorporation. Section 3 enacts, "that when the certificate shall have been filed, as aforesaid, with the clerk of said court, and a duplicate thereof filed in the office of the Secretary of State, the said clerk shall issue a license to the persons who shall have signed and acknowledged the same, on the reception of which they and their successors shall be a body politic and corporate, * * * and be capable in law of purchasing and holding, conveying and disposing, of any such real and personal estate, choses in action and securities, negotiable or otherwise, as may be expedient and necessary to enable the said company to carry on their operations and business named in such certificate." By the 8th section, "all subscriptions to the capital stock shall be payable in such sums and at such times as the board of directors may require." * * * So, there the capital stock was not required to be paid in as here, before a license issued authorizing the company to commence business, but it was sufficient if it was paid in within four years after the date of such license; and instead of being the duty of the directors, as it is here, to have the capital all paid in before commencing business, they might there lawfully defer its payment to any period within the four years. In short, there the debts for which the stockholders were held liable were contracted pursuant to law, while here those for which they are sought to be held liable were contracted in violation of law.

In substance, the same distinction exists between *Aspinwall* v. *Sacchi*, and the present case. There, also, it was provided, when the certificate as to name, etc., had been filed, "and ten per cent of the capital named paid in, the company was entitled to carry on business." Here, the statute in effect says the thing shall not be done, and if it is done, the trustees and corporators shall be liable, etc. In all the cases

referred to the statute says the thing may be done, and the
stockholders, etc., shall be liable, either absolutely or until
some subsequent thing shall be done. In the one case the
liability is in consequence of violating the law, or suffering it
to be violated; in the other the liability is incurred in strict
compliance with the law,—in short, in the one case the lia-
bility is for a wrong done—a *tort;* in the other it is upon
contract. This may be made more clear by referring to
some adjudged cases where the same questions, or questions
analogous, have been involved.

In *Merchants' Bank of New Haven* v. *Bliss et al.* 35 N. Y.
412, suit was brought against the trustees of a manufactur-
ing company to recover a debt due the plaintiff from the
company. The ground of the action was the neglect of the
defendants to file certain reports as required by the law.
The question was, whether the action was penal. After
quoting the sections of the statute applicable, the court said:
"Under these sections the trustees are declared to be jointly
and severally liable for all the debts of the company in qase
of a violation of their provisions. The liability, it must be
observed, is not limited to the injury or damage sustained by
the creditors in consequence of the violation, but upon failure
to file the report, or upon making a prohibited dividend, how-
ever small or trifling the amount, the trustees are subjected
to the payment of the whole amount of the debts of the com-
pany then existing, and for all that shall·be contracted, in
the one case before the report shall be made, and in the
other while they shall respectively continue in office. These
provisions appear to be severally punitive, inflicted on
grounds of public policy for the· protection of creditors, and
the prevention of frauds upon the public in respect to the
financial condition of such corporations. It is clear that the
liability of the trustees is not imposed as an indemnity,
because it has no relation to the loss or injury sustained by
the party in whose favor the action is given. The action

depends wholly upon the statute. There never was any such remedy, or cause of action, in whole or in part, at common law." And it was held the action was for a penalty.

In *First Nat. Bank of Plymouth* v. *Price et al.* 33 Md. 487, suit was brought in Maryland against certain officers of a Pennsylvania corporation, under a Pennsylvania statute making the officers and directors of the corporation liable for the debts of the corporation contracted in excess of the amount of its capital stock. The court, among other things, said: "This liability does not arise upon any contract to which the directors are parties, but is altogether statutory, imposed upon them as wrong-doers, and in its nature penal, and as such can only be enforced within the State where the statute operates."

In *Derrickson* v. *Smith*, 27 N. J. L. (3 Dutcher,) 166, suit was brought against the administrator of a trustee of a New York corporation, to recover the amount of a debt due from the corporation, because of the failure of the trustee to file and publish certain annual reports, as required by a New York statute. The court, in speaking of the liability of the defendant, said: "His liability results from the failure of the trustee to comply with the requirements of the statute. It is, in fact, a penalty inflicted upon the trustee for a failure to perform a duty enjoined by the statute. It is immaterial whether that penalty be a specified sum, or the payment of the debts of the corporation. In either case it is a penalty imposed by statute. Nor is it perceived how the liability of the individual trustee to pay the debts of the corporation can be said, in any proper way, to be founded on contract. It certainly did not result from the contracts made by the corporation, nor from the defendant becoming a stockholder, nor from his accepting the office of trustee, but solely from the omission to comply with the statute. Now, the acceptance of the charter, or the defendant becoming a stockholder, is doubtless an assent to the terms of the charter, but it is,

in no appropriate sense, an engagement to pay the debts of the company imposed as a penalty for violations of the charter. Such liability is clearly the creature of the statute." And it was held there could be no recovery.

In *Kritzer* v. *Woodson*, 19 Mo. 327, the 19th section of the charter provided, that "if the directors of a corporation shall declare and pay dividend when the corporation is insolvent, or the payment of which would render it insolvent, they shall be jointly and severally liable for all debts that shall thereafter be contracted, as long as they shall continue in office, provided that the amount for which they shall all be so liable shall not exceed the amount of such dividend." It was held this liability was for a penalty, and not upon contract. It was said by the court: "It is plain that the section does not make the directors the primary debtors for the excess, for the creditors still have their rights against the corporation, while they have the additional guaranty of the liability of the directors. The words of the act which make them liable for the debts of the company make them liable to those who are the creditors holding such debts against the company. The debts are still the debts of the company." As has been seen, this is precisely the case here. It is added: "The provisions of the section are penal, and are not to be extended beyond the necessary meaning of the language." .

In *Lawler et al.* v. *Burt*, 7 Ohio St. 340, an act of the legislature prohibited the issuing and circulating of unauthorized bank paper, and by an amendatory act it was provided "that every stockholder or partner * * * shall be jointly and severally answerable, in their individual capacity, for the whole amount of the bonds, bills, notes and contracts of such bank, hereafter executed," and it was held the liability under this was in *tort*, for a penalty, and not upon contract. See, also, a kindred case, *Sturges et al.* v. *Burton et al.* 8 Ohio St. 215.

*Halsey* v. *McLean,* 12 Allen, 438, was an action brought
in Massachusetts by a creditor of a New York corporation
against a stockholder of such corporation. By the statute
under which the corporation was organized, it was provided
that every company organized under the act should annually,
within twenty days from the first day of January, make and
publish a report stating the amount of its capital, the pro-
portion paid in, and the amount of all existing debts, "and
if any of said companies shall fail so to do, all the trustees
of the company shall be jointly and severally liable for all
the debts of the company then existing, and for all that shall
be contracted before such report shall be made." It was
held this was highly penal, referring to *Garrison* v. *Howe,* 17
N. Y. 458, and hence that an action could not be maintained
thereon in Massachusetts.

In *Cable* v. *McCune,* 26 Mo. 380, the object of the suit was
to collect a debt of the corporation from a stockholder
because of a failure to publish a certain annual statement.
The court, in speaking of the character of the action, said:
"Our opinion in this case is based entirely upon the penal
character of the statute we are called upon to construe. The
corporation is required to publish an annual statement of
their condition for the information of the public, and a failure
to do so renders the stockholders responsible for a specified
class of demands existing prior to or at the time of such
publication. The object is to inform the public, who expect
to have dealings with such corporations, of their probable
responsibility. This liability, in event of there being no
required publication, does not depend upon the actual injury
which the failure to publish may have occasioned in a given
case, but is absolute, dependent only on the proof of pub-
lication, or no publication. Such a statute can be regarded
in no other light than a penal one." *Moies* v. *Sprague, Admr.*
9 R. I. 1, *Hill* v. *Frazier,* 26 Pa. St. 320, and *Steam Engine
Co.* v. *Hubbard,* 101 U. S. (11 Otto,) 188, were decided upon

a like principle.   See, also, Thompson's Liability of Stockholders, 84.

It would seem still more evident that in case of stockholders in companies organized under special charters, who had fully paid for their stock before July 1, 1869, the liability imposed by section 16 could not be a primary liability. In *Gulliver* v. *Rœlle,* 100 Ill. 154, we held such stockholders were brought under the general law by the 19th section thereof, and after referring to the 19th and 21st sections, we said:  "Until the certificate required by the 10th section was procured and recorded, a company organized under the act is not authorized to transact business, and when companies specially organized were brought under the provisions of the general law, it devolved on them to procure a similar certificate, and record the same, to authorize them to continue in business, and to relieve the shareholders of the liability imposed by the 16th section."  And in *Weidenger* v. *Spruance,* 101 Ill. 285, we said, after quoting the 16th section:  "The object of this was, unmistakably, to compel such companies, before proceeding further, to have their entire capital paid in.  *  *  *  It is, in effect, therefore, saying to old companies whose capital is not all paid in:  'Proceed no further.  Stop right here until all your capital stock is paid in; and if you shall disregard this mandate, your trustees and corporators shall be liable for all debts or responsibilities you shall hereafter create.'  This is but the imposition of a penalty."  And again, in answer to the objection that such a liability impaired the obligation of the contract of subscription of the stockholder, we said: "The liability upon the stockholder is not because he made a contract, which he has performed, to take and pay for so much stock, but because he, as a member of the corporation, and, therefore, a responsible agent in controlling and causing to be executed the corporate powers and functions, has allowed to be done, or failed to prevent the doing of, that

which the law prohibited. As a punishment for the wrong he is responsible for, he is made liable to those injured thereby to the extent of his interest in the corporation, and of his agency presumed therefrom in causing or permitting the injury." As we have before seen, there is a slight inaccuracy in the expression here, although we still think the main idea is entirely correct. The liability is not, in fact, to those alone who are injured, but exists equally where no actual injury has been done, as, for instance, where the corporation is abundantly able to pay all its debts; but the liability is for a wrong done to the public which, presumably, to some extent, is a wrong, also, to every creditor.

In our opinion, counsel are entirely mistaken in saying "the statute does not prescribe some new duty, or forbid some wrongful act, and declare this liability as a penalty." It forbids the wrongful act of proceeding with business and issuing policies when the capital stock is not all paid in and the certificates required by the 10th section are not filed, and declares this liability in consequence of—in other words, as a punishment for—that wrongful act. We repeat, the liability is because of the wrong,—*i. e.*, the failure to perform the duties enjoined by the statute, and not upon the contract of subscription.

Precisely the same question was before us in *Gridley et al.* v. *Barnes et al. ante,* 211, and we there reached the same conclusion we have reached here; and the question was again carefully considered on petition for rehearing in that case, in connection with the arguments in the present case.

We see no cause to disturb the judgments below, and they will therefore be affirmed.

*Judgments affirmed.*