[No. 3773.]

CLOUGH ET AL. v. THE ROCKY MOUNTAIN OIL CO.

1. PRACTICE — PARTIES—MISJOINDER—CORPORATIONS—LIABILITY OF DIRECTORS.

It was a misjoinder of parties to join in one action a suit on contract against a corporation and against the directors of the corporation to hold them liable under section 491, Mills' Ann. Stats. for failure of the corporation to file annual statement, as the liability of the corporation was based on contract, while that of the directors was based on tort. But the misjoinder was cured by dismissing as to the corporation and proceeding alone against the directors.

2. PLEADING—AMENDMENT—NEW CAUSE OF ACTION.

Where an action was brought against a corporation for a debt and against the directors of the corporation to hold them liable for failure to file statement as required by sec. 491, Mills' Ann. Stats. an amended complaint that dismissed as to the corporation and set up more particularly the nature of the original indebtedness and the time when contracted did not set up a new or different cause of action.

3. CORPORATIONS—AMENDMENT OF CHARTER—LIABILITY OF DIRECTORS—LIMITATION.

A corporation may amend its articles of incorporation, but cannot by amendment change the object or purpose for which it was originally incorporated. Where a company was incorporated to manufacture and sell lime, and the managers concluded to add to the business that of mining, and prepared and filed a new certificate in all respects the same as is required for a new corporation, and added to the purpose of manufacturing and selling lime that of mining ore containing precious metals, and the officers of the old company sold to the new one all the property of the old, and the new company assumed as a part of the purchase price all the debts of the old, the new company was an entirely distinct and separate corporation from the old and its agreement to pay the debts of the old company was a contracting of an indebtedness, and as the directors of the new company had until sixty days after January 1 following to

file statement under sec. 491, Mills' Ann. Stats. in an action to hold
the directors liable for failure to file such statement, limitation
would begin to run from the expiration of the time in which the
statement should have been filed, and not when the debt was created.

*Appeal from the District Court of El Paso County.*

Mr. C. W. FRANKLIN, for appellants.

Messrs. COLBURN & DUDLEY and Mr. J. C. HELM, for ap-
pellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the
court.

In the original complaint the appellants were joined as
defendants with the Manitou Lime and Mining Company, a
corporation. The object of the action was to enforce a pen-
alty imposed upon them as directors of that company because
of the failure of the company, through its proper officers, to
file its annual report and its certificate of paid-up stock, in
accordance with the provisions of sections 487 and 491, Mills'
Ann. Stats. (Gen. Stats. secs. 248, 252), which are as follows:

" SEC. 487. The president and a majority of the directors or
trustees, after the payment of the last installment of the cap-
ital stock so fixed and limited by the company, shall make a
certificate stating the amount of the capital so fixed and paid
in, which certificate shall be signed and sworn to by the pres-
ident and a majority of the directors or trustees, and they
shall record the same in the office of the secretary of state,
and a copy in the office of the recorder of deeds of the county
wherein the business of said company is carried on."

" SEC. 491. Every such corporation shall annually, within
sixty days from the first day of January, make a report, which
shall state the amount of its capital and the proportion actually
paid in, and the amount of existing debts; which report shall
be signed by the president, and shall be verified by the oath
of the president or secretary of said company, under its cor-

porate seal, and filed in the office of recorder of deeds of the county where the business of the company shall be carried on. And if any such corporation shall fail so to do, unless the capital stock of such corporation has been fully paid in and a certificate made and filed as provided in section twelve (12) of this act, all the directors or trustees of the company shall be jointly and severally liable for all the debts of the company that shall be contracted during the year next preceding the time when such report should by this section have been made and filed, and until such report shall be made.

To the complaint a demurrer was interposed on various grounds, one of which was that there was an improper joinder of parties defendant. The demurrer was overruled, but thereafter the plaintiff dismissed the action as to the corporation defendant, continuing it as against the individual defendants, as directors, and then filed an amended complaint against them only, upon which the action was tried. Upon agreement of parties the trial was to the court without a jury, and judgment was rendered against defendants in the sum of $3,800, to reverse which this appeal is prosecuted.

In the original complaint it was alleged that the Manitou Lime and Mining Company contracted an indebtedness in favor of the plaintiff corporation between the date of organization of the defendant company and the first day of July, 1893, on which date said defendant company executed and delivered to the plaintiff, as evidencing such indebtedness, its three several promissory notes in the sum of $1,000 each. It was further alleged that the individual defendants were directors of the corporation during the entire period of this default, and that, by reason of such failure of the company to file its annual report and certificate of paid-up stock required by the foregoing sections, such directors became liable for the full amount of the debts of the defendant company contracted in favor of the plaintiff during the year next preceding such failure.

In the amended complaint, as has been said, the action was dismissed as to the corporation, and the plaintiff proceeded

against the directors individually. Aside from this, the only substantial difference between the original and the amended complaint was that the latter set out with greater particularity the nature of the indebtedness and the times when it was contracted by the original defendant company, and in the further fact that there was not, as in the original, a separation of the cause of action into three separate statements. The defendants filed a joint answer denying upon information and belief the indebtedness, denying the authority of the treasurer who executed the promissory notes in the name of the original defendant company, and setting up the plea of the bar of the statute of limitations.

The material facts, as we consider them, are substantially as follows: In 1890 the Manitou Lime and Manufacturing Company, which hereafter for brevity will be called the manufacturing company, was organized to manufacture and sell lime in El Paso county. A part, if not all, of the goods sold and delivered by the plaintiff company was ordered and received by it. Some time during the year 1893 its directors and stockholders, owing to the supposition (as we gather it from the record) that there was valuable mineral on their property, determined to enlarge the scope of the business by adding to it the industry of mining.

To that end a certificate of incorporation of a new company, called the Manitou Lime and Mining Company, hereafter designated as the mining company, was prepared and duly filed in the appropriate public offices on the 10th day of April, 1893. The manufacturing company, by appropriate action in furtherance of this design, voted to sell and transfer to the new company all of the property of the former, and to receive therefor the entire issue of the capital stock of the new, to be distributed to the stockholders of the old in proportion to the interest which they owned therein. The transfer was made on, or after, May 13, 1893. Prior to the beginning of this action no certificate of paid-up stock, and no annual report of either company, were filed within the time required by law, or at all. This action was begun April 20, 1894.

The principal propositions upon which appellants rely to reverse the judgment are, *first*, that no sufficient proof was made of the indebtedness; *second*, that the amended complaint on which the cause was tried set up a wholly new and different cause of action from that contained in the original; *third*, that the act of the stockholders of the manufacturing company with reference to the mining company was, in legal effect, merely an amendment of the former articles of incorporation; that the two corporations are identical, and that when the indebtedness in question (all of which was incurred at various times between March 1 and July 1, 1893) was contracted by the manufacturing company, during all of such periods of time the directors were in default in that they failed to comply with both of the sections of the statute quoted, and inasmuch as the suit was brought more than one year after such alleged default occurred, which was not later than March 2, 1893, the bar of the statute of limitations applies.

1. It is said by counsel for appellants that proof of the indebtedness was not made because the only evidence thereof was the production of the books of the plaintiff company, and that, under our statute, they were not sufficiently identified, or made admissible. With respect to this contention it may be said that, without considering any of the evidence relating to these books, the admissions and conduct of the authorized agents of both the manufacturing company and the mining company furnish ample proof of the indebtedness. It would serve no useful purpose to go through the mass of evidence to show this, but it could be easily demonstrated did we deem it necessary.

2. The defendants apparently misconceive the nature of the cause of action set up in the original complaint. Therein the parties defendant were improperly joined because the liability of the corporation defendant was based upon a contract, while that of its directors arose from a tort, being based upon a penalty imposed for a failure to perform a statutory duty. This misjoinder, however, was cured by a subsequent

dismissal by the plaintiff of the corporation defendant. The averments of the original complaint touching the execution of the promissory notes were not essential to the cause of action. They might be regarded as matters of mere inducement, or as allegations of evidentiary facts involving admissions of indebtedness from the mere fact of their execution, and so treated as surplusage, and yet enough remains to constitute a cause of action justifying a recovery of a statutory penalty. Both parties here concede that the giving of the notes did not cancel the original indebtedness, since they were not paid either in whole or in part.

A careful inspection of the amended complaint shows that, as in the original, the cause of action relied upon was the failure of the directors to perform a statutory duty. The only changes in the amended complaint were a fuller and more particular statement of the character of the original indebtedness and when contracted, and a combination of all the allegations into one, instead of into three separate statements, as originally pleaded. We are entirely clear that a new or different cause of action was not set up in the amended complaint.

It is true that the execution of promissory notes is alleged in both pleadings, and the proof shows that they were executed in the name of the company by the treasurer, whose authority in that respect is denied by appellants. As we have said, it may be true that their execution is tantamount to a recognition, by an authorized agent of the debtor, of its previous indebtedness. The record shows that, in consideration of the receipt by it of these notes, the plaintiff company was induced to, and did, dismiss a previous action which it had brought against the mining company upon the original indebtedness, in which action writs of attachment in aid thereof had been levied upon the property of the company. This dismissal was known to the managing directors of the mining company and acquiesced in by them, and in a subsequent letter written by the company to one of its creditors reference was made to the fact that this action had been dis-

missed, and the property of the company relieved from the lien of the attachment. If, therefore, it were necessary to consider the question as to the authority of the treasurer to give these notes, it might be that his principal, the company, would be estopped to dispute it.

But we think the discussion concerning this point is entirely irrelevant, for the reason that the cause of action was not based upon the promissory notes, and it is entirely immaterial whether or not there was any authority given to the treasurer to issue them in the name of the company.

3. It is essential to the soundness of the appellants' argument that they establish the identity of the manufacturing, with the mining, company, for, if the mining company was organized as a new and independent corporation, there was no necessity of filing its annual report prior to sixty days after the first day of January, 1894, and, if so, the bar of the statute of limitations of one year does not apply, as this action was begun in April following. If, on the other hand, there was only a change in the name of the old corporation, coupled with an increase of the capital stock, then its directors were in default for failure to make the annual report for the year 1892 which should have been filed not later than March 2, 1893. If the latter contention is true, under the doctrine of *Colo. Fuel & Iron Co. v. Lenhart*, 6 Colo. App. 511, the indebtedness having been incurred by the manufacturing company when in default the statute of limitations began to run at the time the indebtedness was contracted, and the most of it was contracted more than one year before this action was brought, and the bar of the statute, as to such part, applies.

It is true that under Session Laws of 1891, p. 92, *et seq.* (3 Mills' Ann. Stats. secs. 447, *et seq.*) any corporation organized under the laws of this state may amend its articles of incorporation by complying with the provisions of the statute, provided, however, no corporation, by amendment, shall so change its articles as to work a change in the object or purpose for which it was originally organized.

Now, the record in this case clearly shows that the managers of the manufacturing company prepared a certificate of incorporation in all respects the same as is necessary in forming a new corporation, and it further appears that the scope and object for which the new corporation was formed differed in part essentially from the purpose for which the original corporation was organized. The former could engage only in the business of manufacturing and selling lime; the new might manufacture and sell lime, it is true, but it also had the additional power, and was given the authority, to engage in the business of mining ore containing precious metals, which, it is needless to say, is quite different from the business of manufacturing and selling lime.

Since, therefore, the manufacturing company could not, by an amendment to its certificate of incorporation, change the object, or purpose, for which it originally was organized, it is apparent that what was done by the officials of the manufacturing company with respect to the mining company made the latter an entirely distinct and separate corporation. Leading to this conclusion is the evident intent and understanding of these officials themselves, for it clearly appears from the records of the manufacturing company that they supposed that the mining company was a new corporation. Indeed, in letters to their stockholders they explicitly state that a change of the objects of the manufacturing company was intended. Strict compliance was had with all the provisions of our general incorporation act relating to original corporations in the preparation and filing of a new certificate, and in no respect were those provisions relating to the amending of corporations regarded. In the new certificate the names of the directors who were to manage the affairs of the company for the first year were given, and the latter elected officers. All these things would have been unnecessary had the object and intention been merely to amend the original certificate. The old company continued to transact business after the new was organized, and the officers of the manufacturing company, in their capacity as such, voted to, and did, sell to the new

company all of the property of the old for a consideration, and as a part of the purchase price which the mining company gave therefor it assumed all of the liabilities and indebtedness of the manufacturing company, which it agreed to pay. This it did on or after May 13, 1893. An indebtedness was thereby contracted by the mining company just as clearly as if it had at that time bought of the plaintiff the merchandise in question which originally was sold to the manufacturing company.

It clearly appearing from the undisputed evidence in this case that the appellants here, as defendants below, failed to perform the duty which the law imposed upon them as directors to file their annual report within the sixty days next ensuing after the first of January, 1894, and the certificate of paid-up stock not having been filed, the statute measures their liability by the amount of all the debts of their company contracted during the year next preceding the time when such report should have been filed, and until such report was made. *Gregory v. Bank*, 3 Colo. 332; *Denver, etc., R. R. Co. v. De Graff*, 2 Colo. App. 42; *Larsen v. James*, 1 Colo. App. 313; *Jenet v. Albers*, 7 Colo. App. 271. See, also, *Diversy v. Smith*, 103 Ill. 378, and s. c. 9 Am. Corp. Cases, 155.

The statute of limitations which is applicable to this cause of action is section 2907, Mills' Ann. Stats. (Gen. Stats. section 2170) and provides that all actions for any penalty of any penal statute, when brought by the state or any person to whom the penalty is given shall be commenced within one year next after the offense is committed, and not after that time. It is contended that, under this statute, the offense was committed when the original indebtedness was contracted by the manufacturing company prior to May 13, 1893, and that under the doctrine of the *Lenhart* case, *supra*, the plaintiff cannot recover. In that case the directors were in default when the debt was contracted, and it was held that the statute began to run when the indebtedness was incurred. But in the case at bar the indebtedness was incurred months before the default began.

As we have already demonstrated, the cause of action here

could not have existed, or accrued, against the directors of the mining company, until after the time had expired within which they might file their report, and this time was not earlier than March 2, 1894. · Hence the *Lenhart* case is not authority for appellants' contention. The "offense" was committed not earlier than March 2, 1894, and the action having been begun on the 20th of April following, and the perfected cause of action set up in the amended, being the same as that imperfectly alleged in the original, complaint, it follows that the bar of the statute had not then run.

Other questions raised by appellants depend upon the main propositions discussed, and in the light of the foregoing must be resolved against them. Conceding, as we readily do, that these statutes imposing penalties are to be strictly construed, nevertheless, as it appears without any controversy that the case has been squarely brought within their provisions, and it further appearing that the district court in arriving at this conclusion has committed no substantial error, we think its judgment should be affirmed, and it is so ordered.

*Affirmed.*