MANUFACTURERS AND MERCHANTS MUTUAL INSURANCE
COMPANY
v.
WILLIAM GENT.

1. MUTUAL INSURANCE COMPANY—LIABILITY.—A mutual insurance
company organized under the act of March 11, 1869, Ch. 73 of R. S. 1874,
is not liable for a loss by fire sustained by one of the applicants for insurance,
where the loss occurs before the company has received the final certificate of
the auditor, in pursuance of section 10 of that act.

2. REPRESENTATIONS OF SOLICITING AGENT.—Even if the soliciting
agent of the company assured appellee that he was insured from the date of
his application, it was not binding upon the company, for the want of au-
thority, of which want of authority appellee must be held to have had full
notice. Neither can any estoppel arise against the company from such state-
ment of their soliciting agent, for, by his application, appellee proposed to
become a member of the company and was therefore charged with a knowl-
edge of its powers and authority conferred upon it by its charter.

3. ESTOPPEL.—The corporators, by using appellee's premium note as a
part of the $50,000 required to entitle them to the auditor's certificate, have
not estopped the company from asserting non liability in this case.

APPEAL from the Circuit Court of Winnebago county; the
Hon. WILLIAM BROWN, Judge, presiding. Opinion filed July
27, 1883.

This action was brought by the appellee against the appellant
to recover for the loss of his property by fire, upon the ground
that he was insured in the appellant company. The circum-
stances out of which the alleged contract arose are substan-
tially as follows:

In June, 1880, some fifteen persons in Rockford signed a
statement in writing expressing their intention to form a mut-
ual insurance company; had the same published as required
by the statute, adopted a charter and duly filed the same in
the office of the Auditor of Public Accounts. The charter was
approved by the Attorney General as provided by the Stat-
ute. Soon after signing such declaration they proceeded to
solicit applications for insurance, and upon August 10th, the

appellee made application upon one of the printed blanks provided by them for such purpose and signed a premium note also upon the same blank, for $150.    His application and note were as follows:

*Form of Policy Application No........*

MANUFACTURERS AND MERCHANTS MUTUAL INSURANCE COMPANY,

of Rockford, Illinois.

Application of William Gent, Esq., of Rockford, county of Winnebago, and State of Illinois, for insurance in the proposed Manufacturers and Merchants Mutual Insurance Company, against loss or damage by fire or lightning in the sum of one thousand dollars, upon the property below specified, for the term of five years, from the .... day of .... 188.., to wit:

$800 on his iron and wood working machinery, fixtures and tools, shafting, gearing, belting, pulleys, hangers and patterns: $200 on his stock of wood and iron and machinery manufactured, unmanufactured and in process of manufacture, and parts thereof, all contained in the two story building, shingle roof, situate on south side of Mill street, Rockford Water Power, West Rockford, Ill., O. C. I. P.

WILLIAM GENT, Applicant.

*Premium Note.*

(The Secretary is authorized to number and date application and note.)

..............................188..

$150.00.

For value received in policy No...., dated the .... day of ........., 188 , I promise to pay The Manufacturers and Merchants Mutual Insurance Company the sum of one hundred and fifty dollars, by installments, at such times as the Board of Directors may order and assess for the losses and expenses of said Company, pursuant to its charter and by-laws. It is hereby expressly understood and agreed that this note is not transferable, and that there is no liability beyond the face amount thereof.

No.....                                    WILLIAM GENT.

Upon the same printed blank was the unsigned agreement of the company that it would, when licensed, issue a policy of insurance to him in accordance with his application. At the same time the appellee, for his cash payment of twenty per cent. of his note, accepted a sight draft for $30. This application was obtained by one Holland, soliciting agent for the corporators, and it is claimed by appellee that said agent assured him at the time that the only chance he took was whether the company would succeed in getting $50,000 capital, so as to enable it to be fully organized; that if it did, his loss would be paid if he should burn down that day; that he was insured from that day. The blanks were not filled in the application, for the reason that it was not known when the policy would be issued, but were to be filled by the secretary to correspond with date of policy.

On February 3, 1881, more than one hundred applications had been taken for insurance and premium notes, and cash received aggregating more than $50,000, and on that day the Auditor of Public Accounts made the examination provided for by the statute, and accepted money and notes to the amount of about $48,500, rejecting the remainder as unavailable, or not in conformity to the statute. Efforts were then at once made to obtain other applications to supply the deficiency of about $1,500, caused by such action of the auditor, and by the 5th of February a sufficient amount had been secured, and of such a character that it was presumed the auditor would accept. The corporators on the 5th of February made the certificate required by Sec. 10 of Ch. 73, R. S. 1874, and on the 9th day of the same month, sent such certificate with the additional premium notes and money to Springfield, to submit them to the auditor and obtain the authority to commence business. The auditor accepted them and approved all the notes as assets of the company, the note of appellee being one of them, and gave to said company on the 10th, a certified copy of the charter and certificates, which was on the same day filed in the office of the clerk of the Circuit Court of Winnebago county. On the next day "the company canceled the application note and draft of appellee, and soon af-

terward tendered the same to him but he refused to accept them. On the evening of the 5th of February the property named in the application was destroyed by fire, and the appellee brought this suit to recover the amount mentioned therein, $1,000. The above facts are all that are material to an understanding of the decision.

Mr. C. M. BRAZEE, for appellant; cited Hurd's R. S. of Ill. 1880, §§ 3, 6, 10, 13, 14.

The company was not liable for any contract or service made or had prior to its organization: Rockford, R. I. & St. L. R. R. Co. v. Sage, 65 Ill. 328; N. Y. & N. H. R. R. Co. v. Ketchum, 27 Conn. 170; Franklin Ins. Co. v. Hart, 31 Md. 59; Western S. M'f'g Co. v. Cousley, 72 Ill. 531; Stowe v. Flagg, 72 Ill. 397.

As to the difference between stock and mutual insurance companies: May on Insurance, §§ 146, 148, 149, 548, 552; Mitchell v. Lycoming M. Ins. Co. 51 Pa. 402.

Mr. A. D. EARLY, for appellee; cited R. S. Ill. 1880, Ch. 73, § 1.

Appellant was a corporation *de jure* before the making of the contract sued on. The certificate of the auditor would not create the company, but would be a mere license to do business: Angell and Ames on Corporations, § 635, p. 684, 11 Ed.; Cross v. Pinckneyville Mill Co. 17 Ill. 54; Tarbell v. Page, 24 Ill. 47; Baker v. Backus, 32 Ill. 79; Stone v. Great West. Oil Co. 41 Ill. 55; Merrick v. Reynolds, etc., 101 Mass. 381; First Nat. Bank, etc., v. Aling, 117 Mass, 476; Whitney v. Wyman, 101 U. S. 392; Diversey v. Smith, 103 Ill. 378; Jhous v. The People, 25 Mich. 499; Van Slyke v. Trempealeau, etc., 48 Wis. 683.

When the statutory law is silent, a corporation may make, as a general rule, all such contracts as are necessary and usual in the course of business: Angell and Ames on Corporations, § 271.

The election of officers who acted for the body, proves an organization in fact: Mitchell v. Deeds, 49 Ill. 416; Marsh v. Astoria Lodge, 27 Ill. 421.

The existence of a law under which a corporation might be formed and a user establish a corporation *de facto:* Morawetz, Private Corporations, § 139; M. E. U. Church v. Pickett, 19 N. Y. 482; Bank of Toledo v. International Bank, 21 N. Y. 542.

A verbal contract of insurance is binding: Wood on Fire Insurance, § 4; Hartford Fire Ins. Co. v. Wilcox, 57 Ill. 180; Hartford Fire Ins. Co. v. Farrish, 73 Ill. 166.

Appellant is estopped to set up the defense of *ultra vires:* Chicago Building Society v. Crowell, 65 Ill. 453; Darst v. Gale, 83 Ill. 136; City of East St. L. v. East St. L. Gas Light and Coke Co. 98 Ill. 415; Peoria & S. R. R. Co. v. Thompson, 103 Ill. 187; Diversey v. Smith, 103 Ill. 378; 2 Parsons on Contracts, 790; Morawetz, Private Corporations, § 100, 106–108; Bigelow on Estoppel, § 423; Angell and Ames on Corporations, § 111, p. 96; Trumbull Co. M. F. Ins. Co. v. Horner, 17 Ohio, 407; Johns v. Farmers' & M. B. of Ind. 2 Blackf. 67; Jones v. Cin. Type F. Co. 14 Ind. 90; Blake v. Holly, 14 Ind. 383.

PILLSBURY, J.  The question presented in this case is whether a mutual insurance company organized under the act of March 11, 1869, Chap. 73 of the R. S. 1874, is liable for a loss by fire sustained by one of the applicants for insurance, where the loss occurs before the company has received the final certificate of the auditor in pursuance of Sec. 10 of that act.  This depends upon the construction to be given that act.  By the first section, any number of persons not less than thirteen, may associate to form an incorporated company for the purpose of insurance, etc.  By the third section such persons are required to file a declaration in the office of the Auditor of Public Accounts, expressing their intention to form such company for the purpose of transacting the business of insurance, comprising in said declaration a copy of the charter proposed for such company, and shall publish a notice of their intention once each week for at least four weeks, in some newspaper published in the county in which such company is proposed to be located.  The fourth section prescribes what the charter

shall contain. The sixth section, as amended May 11th, 1877, L. 1877, page 120, provides that no mutual insurance company in any part of the State outside of the city of Chicago shall commence business until agreements have been entered into for insurance with at least one hundred applicants, the premiums on which shall amount to not less than fifty thousand dollars ($50,000), of which ten thousand dollars ($10,000) at least shall have been paid in cash, and notes of solvent parties founded on actual and *bona fide* applications for insurance shall have been received for the remainder. No one of the notes received shall be for more than one thousand dollars, and no two shall be given for the same risk, or be made by the same person or firm, except where the whole amount of such notes shall not exceed one thousand dollars, nor shall any such note be represented as capital stock unless a policy be issued upon the same within thirty days after the organization of the company upon a risk that shall not be for a shorter period than twelve months.

The 10th section of the act is as follows:

Sec. 10. The charter and the proof of publication herein required to be filed by every such company shall be examined by the Attorney General, and if found conformable with this act and not inconsistent with the constitution or laws of this State, shall be certified by him to the Auditor of Public Accounts, who shall thereupon cause an examination to be made either by himself or three disinterested persons specially appointed by him for that purpose, who shall certify under oath that the capital herein required of the company named in the charter, according to the nature of the business proposed to be transacted by such company, has been paid in and is possessed by it in money or in stocks and mortgages as are required by the eighth section of this act, or if a mutual company, that it has received and is in actual possession of the capital, premiums or *bona fide* engagements of insurance, or other securities, as the case may be, to the full extent and of the value required by the sixth section of this act; and the name and the residence of the maker of each premium note forming part of the capital, and the amount of such note, shall

be returned to the said auditor, and the corporators and officers of such company shall be required to certify, under oath, that the capital exhibited to those persons is *bona fide* property of the company. Such certificates shall be filed in the office of the said auditor, who shall thereupon deliver to such company a certified copy of the charter and of said certificates, which, on being filed in the office of the clerk of the county where the company is to be located, shall be their authority to commence business and issue policies; and such certified copy of the charter and of said certificates may be used in evidence for or against said company, with the same effect with the originals, and shall be conclusive evidence of the fact of the organization of such company.

There is a provision in the 13th section that every person effecting insurance in any mutual company organized under this act, and also their heirs, executors, administrators and assigns continuing to be so insured, shall thereby become members of said corporation during the period of insurance.

Applying these provisions of the statute to the facts of this case the question presented is not difficult of solution.

The statute authorizes the persons signing the declaration to take the preliminary steps necessary to the formation of an insurance company, which shall, after having complied with all the provisions of the statute, have power to make valid contracts of insurance and assess each and every member of the company his proportion of any loss by fire sustained by any other member, but we fail to find in the statute any warrant for holding that the original corporators, while engaged in obtaining the necessary number of applications for insurance and amount in cash and notes sufficient for final organization, and to entitle them to the license of the auditor to commence business and issue policies, have any power to make present contracts of insurance binding upon the company if it should be finally organized. Their authority seems to be limited by the statute to receiving applications for future insurance, thereby obtaining the capital necessary to enable the company, when organized, to furnish indemnity to its members. These provisions of the statute passed in re-

view before the Supreme Court in the case of Diversey v. Smith, 103 Ill. 379, and after quoting section 10 of the act the court say:

"It thus conclusively appears that until after the Auditor of Public Accounts shall have delivered to the company the certified copy of the charter and certificates, and the company shall have filed them in the office of the proper county clerk, there is no authority whatever for the company to commence business and issue policies, and any attempt on its part to do so before, is in direct violation of the statute; for a provision that certain things shall be done to constitute a license or authority is equivalent to an express prohibition against the license or authority unless those things be done.    *    *    * The command of the law then is, business shall not be commenced and policies issued, unless those things are done which are required as a license or authority to commence business and issue policies."

From this it is seen that even if Holland, the soliciting agent, assured the appellee that he was insured from the date of his application, it was not binding upon the company for the want of authority—of which want of authority the appellee must be held to have had full notice, for he knew that the company was designed as a mutual one under the statute, not yet fully organized for want of sufficient number of applicants, and he by his application was aiding the proposed company in its efforts to perfect its organization, making one of the number necessary to the final success of the enterprise.

Neither, as we think, can any estoppel arise against the company from such statement of Holland, for by his application the appellee proposed to become a member of the company and was therefore charged with a knowledge of its powers and authority conferred upon it by its charter: Mitchell v. Lycoming Mut. Ins. Co. 51 Pa. St. 402; and all the power the original corporator could possess or exercise in securing the capital essential to the right to make contracts of insurance being well defined and limited by a general law, the appellee is conclusively presumed to have notice of the extent thereof. Dart v. Hercules, 57 Ill. 447; Dunning v. Smith, 3 Johns.

Ch. 332.   From the position voluntarily assumed by the appellee with reference to the full organization of such company, he could not have been deceived by any such statements made by Holland, and therefore the first element of an estoppel *in pais* is wanting in the case.   This statement of Holland is the only circumstance in the case, as we read the record, upon which the appellee can base his claim that there was an existing contract of present insurance made by the said corporators; for as we construe his written application it does not constitute an agreement for present indemnity but is an application by him for future insurance, under the statute, and which, being accepted by the auditor, would entitle him to a policy upon the property therein described, in case the company should be finally authorized by the auditor to commence business and issue policies.

That this was so understood by the appellee is quite clear from the evidence that the dates were left blank in the application and note, to be thereafter filled as of the date of the policy when issued, and the application would then appear to be one for a term of five years' insurance from its then date and thus correspond with the policy.

The above considerations lead us to conclude that at the time of his loss on the 5th day of February the appellee had no such agreement of present insurance upon the property as would render the company afterward licensed liable for such loss.   At this time he was not entitled to a policy, as the company was prohibited by the statute from commencing business and issuing policies; neither was he a member of the company, for by the statute membership does not depend alone upon the application for insurance, but upon the fact of being insured; and herein the case is different from that referred to by counsel for appellee, of Van Slyke v. Trempealeau Co. Ins. Co. 4S Wis. 683; for there the act of signing the application made the party a member, and besides, in that case the company had become fully authorized to issue policies before the loss, and the plaintiff was entitled to have his policy issued, but had not yet received it, and it was held that being a member of the company at the time of his loss and entitled

to his policy it was not essential to the right of recovery that the policy should be actually issued. But it is urged that the corporators, by using his premium note as a part of the $50,-000 required to entitle them to the auditor's certificate, have estopped the company from asserting non liability in this case.

The final certificate of the corporators was made and sworn to on the 5th day of February, and it is but a fair presumption that it was sworn to before the loss by plaintiff in the evening of that day, and more particularly as it is stated therein that the applications, among which was that of appellee, were all *bona fide* and unimpaired; for if made afterward, some of the corporators being at the fire would rest under the imputation of making a false statement under oath, which should not be attributed to them without a sufficient cause therefor appearing in the record. It may be that good faith upon their part to the appellee and to the auditor would have required them to amend their certificate by excluding the application of the appellee, yet we do not see that a failure to do so could make the company liable for a loss where there was, and could be, no valid contract for insurance subsisting at time of loss. The loss of appellee occurred while the proceedings taken for the formation of the company were still incomplete and before a risk could be lawfully taken or policy issued, and we think in such case where the property proposed to be insured is destroyed by fire, the application must be held to be abrogated by such destruction of the subject-matter of the proposed contract. It is only members of the company subject to be assessed for losses who are entitled to indemnity from their fellow members, and the 13th section of the statute making actual insurance essential to membership in a mutual company, the conclusion seems inevitable that where the property is destroyed before it can, under the statute, be legally insured and the applicant become thereby a member of the company and subject to the burdens and entitled to the benefits of such position, all rights and liabilities under such application are at once determined. If this be so, then the appellee could have prevented the use of his

note by the corporators as a part of the assets of the company in obtaining its license. At all events the act of the corporators did not create a contract between him and the company to pay his loss.

We see no right of recovery in this case and reverse the judgment.

Judgment reversed.