## ERNEST H. RICKER
## v.
## CYRUS H. LARKIN ET AL.

*Corporations—Record of Incorporation—Fraud—Injunction—Costs.*

1. A corporation is not authorized to proceed to business until the certificate of complete organization and a copy of all papers filed with the Secretary of State have been duly recorded.

2. Where such papers have been fraudulently and surreptitiously recorded, contrary to the agreement of the incorporators, such record is of no effect.

3. An injunction lies to prevent one of the incorporators of a proposed corporation from doing business in its name before it is duly incorporated.

[Opinion filed May 28, 1889.]

IN ERROR to the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

### On Motion to Tax Costs.

The defendants in error move the court to tax the costs of the additional abstract made by them to the plaintiff in error.

The motion will be overruled.

After an examination of the abstract of the plaintiff in error, and a comparison of it with that filed by defendants in error, we are of the opinion that the abstract filed by the former is in substantial compliance with the rules of this court, though it may have failed in some unimportant particulars. We do not think the failure was sufficient to call for a new abstract.

### Statement of Facts.

The defendants in error filed their bill of complaint against the plaintiff in error, praying to restrain him, his agents, attorneys, etc., from issuing catalogues purporting to be printed by the "Elgin Nurseries and Seed Co.," and from transacting any business under the name of the company. The bill charges

that the plaintiff in error, Ricker, had been engaged in the nursery business in Elgin for the six years past; that the parties hereto entered into the following agreement to form the said stock company, and marked " A," as follows:

Exhibit " A," memorandum of agreement between Ricker of the first part, and Larkin, of the second part, dated August 24, 1886.

Recites that the parties and Scofield are about to form a corporation, to be known as Elgin Nurseries and Seed Company, capital stock 500 shares at $50 each, and that first party wants second party to become interested; the covenants are :

1st.  First party will subscribe for 258 shares of stock, and pay company 50 per cent. of the par value by assigning and conveying his nursery stock, chattel property, etc., for which company is to pay him $5,000 in cash, and credit him with 50 per cent. of his subscription to be paid on 258 shares of stock.

2d.  Second party will subscribe for 240 shares of stock, and will pay into the company, within five days of its organization, 50 per cent. of the par value thereof.

3d.  First party to act as business manager, unless company should appoint some one else; to devote his time, etc., and receive $100 per month salary.

4th.  Shall keep a true account, open to inspection of second party, and on demand of second party shall immediately pay over to company the money in his hands.

5th.  For any service second party may render he shall be paid a reasonable compensation.

6th.  For any money second party may advance to the company over 50 per cent., second party guarantees 8 per cent. interest on same, and the company shall promptly repay on demand.

7th.  Neither party shall sell any of the capital stock without first giving the other the refusal.

8th.  At the end of one year, second party to have option to receive $6,900 for his stock, in cash, or retain same and share in profits, which first party guarantees to be not less than 15 per cent., and in case he elects to take the $6,900 cash, the first party is to take the same and pay for it within thirty

days and indemnify second party from any liability by reason of his having been a stockholder; if second party retains stock, first party guarantees that company shall pay annual dividend of not less than 15 per cent. for the term of — years ensuing.

9th. To secure the prompt payment and faithful performance of this contract on part of first party, he will, within five days of the time of the complete organization of said company, assign and turn over to second party 250 shares of the capital stock of such company, which shall henceforth stand in the name of second party on the books of the company and be controlled by him. In event of failure on part of the first party to comply with the terms of this contract, second party shall have the right to sell any or all of the 250 shares of stock at public or private sale, without notice to first party, for the best price that he can obtain for cash. If at the end of the year second party shall elect to hold his stock, instead of selling it for $6,900, he shall return to first party 200 shares and retain 50 shares.

The following are the main allegations of the bill upon which relief was granted, to wit:

Charges that before this time, and about August 6th, Ranstead had prepared the preliminary papers for the organization of a company to be called the "Elgin Nursery and Seed Company," which were signed by Ricker, Scofield and one Ezra Rue, as commissioners, Larkin being absent; that a license was at once issued to open books to take subscriptions to the capital stock, and that thereupon the capital stock was fully subscribed, as follows: Scofield two shares, Ricker 258 shares, Larkin 240 shares; that the commissioners called a meeting of subscribers to elect directors, at which meeting, held September 1st, all the said subscribers were elected directors; that the commissioners thereupon made their report, and a certificate that the corporation was duly organized was issued from the office of the Secretary of State, and received on or about September 3d. (A copy of certificate and papers relating to organization attached, marked "Exhibit B.")

Larkin charges that when he subscribed for the stock Ricker understood that he, Ricker, was to sign a contract and carry

out verbal agreements; that Ricker insisted upon having the company fully organized, so that the fall trade in the nursery business might be carried on in the name of the company; charges that Ricker got out some circulars, to be distributed with catalogues, announcing to patrons the formation of the new company, but that Larkin would not consent to their distribution until a contract and bond was signed by Ricker.

Charges that Ricker and the defendant had an informal meeting at Scofield's house September 8th, and that Larkin submitted a draft of by-laws of such company; among other things, that the treasurer and the manager, who was also to be secretary, should give bonds in the sum of $20,000. Ricker objected to giving so large a bond; charges that Ricker at this time wanted a modification in the proposed contract between himself and Larkin. Instead of condition to take Larkin's stock at end of year for $6,900, Ricker wanted option to take at that price before end of year, and would give Larkin a mortgage on 320 acres of land in Dakota, and give bond with approved surety. Larkin considered this, and on the 10th of September said he would agree to it, but that Ricker must execute a contract and furnish a bond at once or drop the whole matter; charges that Ricker said he would.

Scofield admits that he signed the call for a meeting of stockholders, dated September 13th, but states that he did it under the impression that Ricker and Larkin had arranged their difficulties; and also states that he did not know at the time that Ricker had caused the corporation papers to be recorded.

Larkin charges again that it was understood that Ranstead was to draw the papers, "who was to hold such papers and documents until the said contract was executed by both parties;" states on information and belief that Ranstead had sole charge of said papers; and charges that he, Larkin, fully understood that the papers were not to be filed for record until a contract was signed between himself and Ricker; states that in Larkin's absence Ricker went to Ranstead's office and asked to take the papers to examine them; that Ranstead gave Ricker the papers thinking he would return them, but that Ricker filed them for

record September 8th, without the knowledge or consent of either defendant and in violation of the said agreement or understanding.

Larkin admits that he received the notice for the meeting of stockholders September 23d, and attended the meeting, and there first learned that Ricker had filed the papers; that he, Larkin, protested, and said that he wouldn't go any further with the business unless Ricker would sign the contract with him and give a bond; that Ricker said he would not sign such contract or give such bond, and that if Larkin wouldn't unite with him to call a meeting to elect officers and adopt by-laws, he would apply to the courts; and that thereupon Ricker did file his petition for a *mandamus* to compel Larkin and Scofield to act, and that such proceedings are now pending in this Circuit Court.

Larkin states that he was afraid that Ricker would use the name of the corporation in his business, and made some inquiries in November, but was unable to find that Ricker was doing any business in the name of the corporation; states that the complainants have never recognized the corporation except as stated in the bill, and they did what they did under the belief that Ricker would sign the contract.

Complainants charge that on the 5th of January, 1887, they each received a letter from Ricker, stating that he had written up a catalogue for "The Elgin Nurseries and Seed Co." for the spring trade of 1887, and that if they wished to see it they could call; that Larkin went to Ricker a day or two afterward and protested against the publication of the circulars and catalogues; that on the 7th Scofield procured a copy which is filed as an exhibit with this bill; that said catalogue purports to be issued by "The Elgin Nurseries and Seed Co.;" represents the company as incorporated in 1886, with a capital stock of $25,000; is a successor to E. H. Ricker & Co., and that, "during the year 1886, we have formed a corporation under the name of 'The Elgin Nurseries and Seed Co.,' with a capital stock of $25,000. The directors are E. H. Ricker D. C. Scofield and C. H. Larkin.

"E. H. RICKER, Business Manager."

Charges that Ricker used envelopes with the name of the corporation printed in red ink as successors to the old company of E. H. Ricker & Co; states that the complainants believe that it is Ricker's intention to give a large number of such catalogues printed for general distribution, and that unless restrained he will send them out; have reason to believe that he intends to conduct his business in the name of the said company.

Charges that Ricker has never signed the contract or executed bond and refuses to do so; that the incorporation papers were fraudulently taken from Ranstead's office and wrongfully filed by Ricker as stated, with the intention of forcing complainants into the company, as they believe, without their consent.

Charged that the company has no existence in fact; that the subscriptions are not paid, has no tangible property, no business, no by-laws and officers, except as stated; charges that they aided in organization in order to help Ricker, and to secure Larkin for the money he was to advance, and that the action of Ricker in filing the papers is a gross fraud on the complainants.

Charges that the complainants are old residents of Kane County and men of means; that they believe Ricker to be a man of limited resources; that they are told that Ricker claims to have already paid out $300 in behalf of the said company and incurred liabilities on behalf of the company to the amount of $100; besides are afraid if Ricker should send out catalogues with their names as directors they might be charged as to third persons; that unless restrained he will incur obligations for which they may be charged.

Messrs. R. M. IRELAND and R. N. BOTSFORD, for plaintiff in error.

The effect of granting the injunction, whether the corporation is regularly organized or irregularly organized, whether the same is a valid corporation or invalid, is to wipe it out of existence. The bill shows that the defendants in error, who are two of the three directors, refuse to act, and deny the va-

lidity of the corporation, and, of course, the restraining of the third, Ricker, who alleges its validity would destroy the corporation as completely as if it were ousted of its franchise, or dissolved by a direct proceeding brought for the purpose and in a legitimate way. We think, therefore, that we are right in our position that the validity or integrity of a corporation is involved here. The defendants deny its validity, the plaintiff asserts it; the effect of a decision in favor of the defendants would be to destroy the corporation.

But, if this proposition is correct, the bill should be dismissed, for it is almost elementary that the validity of a corporation can not be attacked collaterally. Baker v. Adm'r of Backus, 32 Ill. 83; Tarbell v. Page, 24 Ill. 46; McCarthy v. Lavische, 89 Ill. 270.

Even then, if the defendants in error are right in their contention that this corporation was never legally organized and the plaintiff in error wrong in his contention that it is a valid corporation, a direct proceeding should be brought by them for the purpose of setting it aside; and, under a thin disguise of seeking to avoid a collateral or incidental injury, they should not be heard here in their attempt to destroy the corporate character of this company, or render the same nugatory, against the protest of a stockholder, and, also, without the franchise it should not be heard. Baker v. Adm'r of Backus, 32 Ill. 83; Campbell v. Morgan, 4 Ill. App. 100.

It is apparent that if the injunction should be granted, it would have the effect not only to destroy the corporation, but it would have the further effect to release the defendants from the payment of their subscriptions. The law is settled that this can not be done except by the unanimous consent of all the subscribers. Binmore Corp. Manual, Sec. 25; Melvin v. Lamar Ins. Co., 80 Ill. 447.

The subscription to stock is a contract, not to be varied by extrinsic agreements. Ridgefield, etc., R. P. Co. v. Brush, 43 Conn. 86; Corwith v. Culver, 69 Ill. 503; Thompson, Liability of Stockholders, Sec. 121.

The defendants in error having assisted in the organization of the company, and subscribed to its stock, acted in their

capacities as stockholders in electing themselves directors, and having accepted the trust embodied in the position of directors, are estopped now to deny the validity of the corporation. Stone v. Great Western Oil Co., 41 Ill. 92; Binmore's Corp. Manual, Sec. 277; McCarthy v. Lavasche, 89 Ill. 270; Rutz v. The Essler and Ropiegnet Mfg. Co., 3 Ill. App. 87; Corwith v. Culver, 69 Ill. 506; Thompson on Liabilities of Stockholders, Secs. 161, 162, 163.

Mr. J. W. RANSTEAD, for defendant in error.

Injunction is the proper remedy in this case. In publishing the proposed catalogue and using the stationery proposed by Ricker, the defendants in error would have been held out to the public as directors in this company, and, as to third persons, would have been liable, to the extent of their stock subscriptions at least, for any obligations incurred in the name and upon the credit of the company. If such holding out by Ricker was unauthorized by them and in his own wrong, then they were threatened with serious damage, and such publication and use of their names should be enjoined. Ruth v. Webster, 10 Beav. 561; 2 Lindley on Partnership (Ewell's Edition), 999, 1000; High on Injunction, Secs. 1091, 1339; 2 Story Eq. Juris., Sec. 951.

The company was not fully organized and could not proceed to business until the final certificate of incorporation was recorded with the recorder of deeds of Kane County. Revised Statutes, Ch. 32, Sec. 4; Bigelow v. Gregory et al., 73 Ill. 197, Gent v. Manf. and Mer. Ins. Co., 107 Ill. 652; Morawetz on Corporations (2d Ed.) 30.

The filing of the certificate was unauthorized and does not bind the defendants in error.

The case is similar to that of a deed in escrow which is recorded contrary to the conditions of the deposit; such recording would not amount to a delivery of the deed. Haddock v. Haddock, 22 Ill. 388; I. C. R. R. Co. v. McCullough, 59 Ill. 166.

LACEY, J. The bill was demurred to by the plaintiff in

error, and upon hearing the court overruled the demurrer, and the plaintiff in error choosing to abide his bill, the court rendered a decree in favor of the defendants in error in accordance with the prayer of the bill. To reverse this decree this writ of error is sued out. It is insisted that the bill shows that the organization of the " Elgin Nurseries and Seed Co." had been completed; hence the relief prayed for was within the control of the corporation itself.

The main question arising in the case is, was the organization of the company completed? We are clearly of the opinion it was not. Sec. 4, Chap. 32, R. S., provides that, " the Secretary of State shall thereupon issue a certificate of complete organization of the corporation making thereof a copy of all papers filed in his office in and about the organization of the corporation and duly authenticated under his hand and seal of State, and the same shall be recorded in a book kept for that purpose in the office of the recorder of deeds in the county where the principal office of such company is located. Upon the recording of the said copy the corporation shall be duly organized and may proceed to business."

It would seem clear without reference to any judicial construction of the above section of the statute that the organization of the company could not be complete without the filing of the copy as required.

The grant " to proceed to business " is plainly made to depend on such recording. The prohibition to proceed to business need not be in express words. The corporation depends for its powers upon the provisions of the statute either express or implied, and none is granted without the record.

But the statute in question has received judicial construction, by both this court and the Supreme Court, both holding to the principle here announced. Bigelow v. Gregory, 73 Ill. 197; Gent v. M. & M. Ins. Co., 107 Ill. 652; Same case reported in 13 Ill. App. 308; Deversey v. Smith, 103 Ill. 378. The case of Cross v. Pinckneyville, 17 Ill. 58, is explained in Bigelow v. Gregory, *supra*. It is true that the copy of the papers were actually filed in the recorder's office, but surreptitiously and fraudulently, by the plaintiff in error, and contrary

to the agreement of the incorporators and against the will and without the contest of the other proposed members of the proposed incorporation. It is true that the original agreement to incorporate did not require plaintiff in error to give bond, but by mutual agreement a change was made in the agreement in which concessions were mutually made and by which the plaintiff in error agreed to give a bond with security before the completion of the organization. This was binding and should have been complied with. The bill shows a clear case of fraudulent intent on the part of the plaintiff in error to obtain the benefits of the organization without complying with his part of the agreement. The procurement of the recording of the papers fraudulently had no more effect to make a legal record than though the papers had never been recorded. Haddock v. Haddock, 22 Ill. 388; I. C. R. R. Co. v. McCullough, 59 Ill. 166. According to the allegations of the bill the defendants in error never ratified the act of recording of the copy of the incorporation papers by plaintiff in error. Holding, as we do, that the bill shows that the proposed organization was never completed, it will be unnecessary to notice the argument of plaintiff in error's counsel based on the supposition that there was a complete, organization. Finding no error in the record the decree of the Circuit Court is affirmed.

*Decree affirmed.*