Q. W. LOVERIN *et al.* impleaded, etc.

*v.*

W. F. McLAUGHLIN.

*Filed at Ottawa May 12, 1896.*

1. CORPORATIONS—*officers of, liable for debts prematurely contracted.* The directors and officers of a corporation are, under the statute, (Rev. Stat. 1874, chap. 32, secs. 4, 18,) liable for its debts contracted by them in the name of the corporation before the certificate of its complete organization has been recorded in the county where its principal office is located.

2. SAME—*members of illegal corporation are liable as partners.* The members or stockholders of a corporation illegally formed are liable, as partners, for its acts or contracts, and directors, officers and agents acting in its name render themselves personally liable, independently of the statute.*

3. ESTOPPEL—*dealing with corporation as being such de facto, not an estoppel.* A creditor is not estopped by dealing with a corporation as being such, *de facto,* from asserting the liability of the officers or directors for debts contracted in the name of the corporation without the statute having been complied with.

4. SAME—*proving claim against corporation is not an estoppel to sue officers.* Filing a claim against the corporation with its assignee does not estop a creditor from afterwards asserting the personal liability of officers for non-compliance with the statute.

5. ACTION—*action given against officers of corporation is at law.* An action at law, and not in equity, is the proper remedy for enforcing the personal liability of officers or directors of a corporation under the statute.

*Loverin v. McLaughlin,* 46 Ill. App. 373, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

This is an action, brought by defendant in error against plaintiffs in error, as directors of a corporation called the "Q. W. Loverin Company," for the purpose of establish-

---

*The partnership liability of stockholders in case of defective or illegal incorporation is considered at length in a note to *Rutherford v. Hill,* (Ore.) 17 L. R. A. 549.

161—27

161 417
66a 346
161 417
165 368
161 417
69a 533
69a 534
161 417
169 236
161 417
73a 96
161 417
173 414
80a 138
80a 140
80a 186
80a 197
161 417
181 241
161 417
f190 [1]468
161 417
e199 [2]344
199 [3]434
199 [4]434
d102a[1]292
102a [2]293
161 417
201 95
e103a[1]631
e103a[3]631

ing against them a liability under section 18 of the Corporation act for failing to file in the recorder's office a certificate, issued by the Secretary of State, of the complete organization of the corporation, as required by section 4.of that act.

Said section 18 (1 Starr & Cur. chap. 32, p. 617), is as follows: "If any person or persons being, or pretending to be, an officer or agent or board of directors of any stock corporation or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation or pretended corporation, without complying with the provisions of this act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation or pretended corporation."

Said section 4 (1 Starr & Cur. chap. 32, pp. 610, 611), is as follows: "The commissioners shall make a full report of their proceedings, including therein a copy of the notice provided for in the foregoing section, a copy of the subscription list, and the names of the directors or managers elected, and their respective terms of office, which report shall be sworn to by at least a majority of the commissioners, and shall be filed in the office of the Secretary of State. The Secretary of State shall thereupon issue a certificate of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of State, and the same shall be recorded in a book for that purpose, in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of the said copy the corporation shall be deemed fully organized and may proceed to business. Unless such company shall be organized and shall proceed to business, as provided in this act,

within two years after the date of such license, then such license shall be deemed revoked and all proceedings thereunder void."

The first count of the declaration avers that on the 16th of October, 1889, and at divers times prior thereto, beginning with the 3d of April, 1889, "said defendants, pretending to be directors and officers of a pretended stock corporation by the name of Q. W. Loverin Company, did assume to use corporate powers and to use the name of said pretended stock corporation without having theretofore complied with an act of the State of Illinois entitled 'An act concerning corporations,' (being a part of chapter 32 of the Revised Statutes of the State of Illinois,) which prescribes and regulates the manner in and by which corporations for pecuniary profit may be lawfully organized and authorized to do business,—that is to say, said defendants did not file or cause to be filed, and there had not been filed prior to or at said time, to-wit, the 16th day of October, 1889, in the recorder's office of Cook county, in which county was the principal office of said pretended corporation, a certificate from the Secretary of State of the State of Illinois of the complete organization of said corporation, and, so assuming and pretending, as aforesaid, said defendants did purchase from said plaintiff, on the alleged behalf of said pretended corporation, divers goods, wares and merchandise, of the value, in all, of the sum of eleven hundred and sixty-eight dollars and seventy-one cents ($1168.71), which said goods, wares and merchandise were by said plaintiff at the times, respectively, of said purchase, and at the request of said defendants, delivered to them as, and so pretending to be, directors, officers and agents of said pretended corporation, whereby, and by force of the statute in such case made and provided, said defendants became and were, jointly and severally, liable to pay the plaintiff said purchase price or value of said goods, wares and merchandise so as aforesaid purchased by them in

the name of such pretended corporation, and, being so liable, said defendants, etc., promised to pay."

A second count was filed with the amended declaration but was subsequently withdrawn, and a substitute for the second count was filed, pleading the same facts, in the same language as in the first count, but omitting any reference to the statute, and alleging "that the defendants thereby became jointly and severally liable, as partners doing business under the name of Q. W. Loverin Company, to pay," etc.

A demurrer to the first count was overruled, whereupon three special pleas to said count were filed. The gist of the first plea is, that the plaintiff has no cause of action, because, prior to the making of the supposed promises, "all the capital stock named in the articles of incorporation of said Q. W. Loverin Company had been fully subscribed in good faith, and that the said several supposed promises and undertakings in said count mentioned were made by defendants, if at all, in their respective capacities as directors of said corporation, the Q. W. Loverin Company, and not otherwise," etc. The second plea (after showing, in detail, the taking of all previous steps requisite to the formation of a corporation for pecuniary profit,) sets up that nearly two years prior to April 3, 1889, the Secretary of State issued and delivered to the defendants, as directors, a duly authenticated certificate of the complete organization of the corporation, Q. W. Loverin Company, and that thereupon the said corporation became and was a corporation *de facto;* that the said several promises and undertakings were made by the said defendants, if at all, as directors, etc., "and not otherwise, and are the promises of said corporation and not of said defendants." But the plea does not deny the averment of the declaration that the certificate of complete organization was not filed for record in Cook county, where the principal office of the Q. W. Loverin Company was located. The third plea

sets up, that prior to April 3, 1889, "all the capital stock named in the articles of incorporation of the said Q. W. Loverin Company had been fully subscribed in good faith and said subscriptions fully paid, and a certificate of the complete organization of the said Q. W. Loverin Company had been issued by the Secretary of State, and every requirement of the Corporation act had been fully complied with, except that the said certificate of complete organization of said corporation had not been recorded in the recorder's office of Cook county before said 16th day of October, 1889; that said Q. W. Loverin Company thereby became a corporation *de facto*, and that on said 3d day of April, and on other dates, the said plaintiff recognized its corporate existence and contracted with these defendants as representatives of said corporation, and not otherwise, and is estopped to deny its corporate existence." Then the plea sets up that in July, 1889, the Q. W. Loverin Company, as a corporation, made a voluntary assignment for the benefit of creditors; that the plaintiff, to obtain a dividend from the assets of said corporation, made, and on the 15th of October, 1889, filed with the assignee, a verified claim of $1168.71, being for the same account as was sued upon in this suit.

A general demurrer to all three special pleas was sustained, and defendants elected to abide by their said pleas. Subsequently the order was vacated in so far as it sustained the demurrer as to the third of said pleas, without, however, impairing the force or effect of said order in so far as it sustained the demurrer as to the first and second of said pleas, and a replication to said third plea was filed. By his replication to the third plea the plaintiff showed that he had never received from the assignee, or from any other source, any portion of the sums due him, and that, after filing his verified claim with said assignee, a judgment was duly entered, in accordance with the statute, in the county court of Cook county, discontinuing all proceedings in the matter of the said

assignment, and thereby, and by force of the statute, all parties were remitted to the same rights as existed at the time of the assignment.

Demurrers to this replication and to the so-called substituted or amended second count having been overruled, the defendants elected to abide by their demurrers. It being stipulated that, if there was a right of recovery, the amount which the plaintiff was entitled to was $1168.71, judgment was entered in plaintiff's favor for that sum and costs. The Appellate Court has affirmed the judgment thus rendered by the circuit court.

DOOLITTLE, PALMER & TOLMAN, for plaintiffs in error:

Parties who have attempted to organize a corporation, but have failed to comply with the law so as to perfect their incorporation, may be held liable as to creditors, as in *Bigelow* v. *Gregory*, 73 Ill. 197. This liability rests on the doctrine of estoppel. When even a creditor has dealt with the corporation as such, partnership liability cannot be enforced, even though the corporation has not been legally organized. *Tarbell* v. *Page*, 24 Ill. 46.

The agent, when sued upon such contract, can exonerate himself from personal liability only by showing his authority to bind those for whom he assumes to act. *Wheeler* v. *Reed*, 36 Ill. 91; *Mann* v. *Richardson*, 66 id. 481.

But of this doctrine it is said by the Supreme Court: "The question under consideration was not before the court in *Wheeler* v. *Reed*, 36 Ill. 91, nor in *Mann* v. *Richardson*, 66 id. 481, and what was then said affecting it was by way of argument merely, and, so far as intended to announce a principle, must be understood as restricted to cases where there are apt words in the instrument to charge the agent personally, by rejecting the words descriptive of his agency as surplusage." *Hancock* v. *Yonker*, 83 Ill. 214.

Inasmuch as the defendant corporation and all its members are estopped from denying the existence of the

corporation and its corporate liability, the plaintiff is in like manner estopped to dispute either.   *Tarbell* v. *Page*, 24 Ill. 46; *McCarthy* v. *Lavasche*, 89 id. 270.

The plaintiff was estopped, not only by his dealings with the corporation in the sale of the goods, but further by adopting the assignment made by the corporation, which was in effect to bring a suit against it in its corporate capacity.   *Creswell* v. *Oberly*, 17 Ill. App. 281.

JOHN MAYNARD HARLAN, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The main question in this case is, whether the directors and officers of a corporation are liable, under section 18 of the general Incorporation act of the State, for debts and liabilities contracted by them in the name of the corporation before a certificate from the Secretary of State of the complete organization of the corporation has been recorded in the office of the recorder of deeds of the county, where the principal office of such company is located, as required by section 4 of said act.

*First*—In order to answer this question, it is desirable at the outset to ascertain, if possible, the true meaning of section 4. That section, which is set out in full in the statement preceding this opinion, after directing that the Secretary of State shall issue a certificate of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and the seal of the State, and that "the same shall be recorded in a book for that purpose in the office of the recorder of deeds of the county where the principal office of such company is located," then makes use of the following language: "Upon the recording of said copy, the corporation shall be deemed fully organized, and may proceed to business."

Although the literal language here used would seem
to demand only a recording of the "copy of all papers
filed" in the office of the Secretary of State, yet it is the
evident intention to require the recording, not of the
copy only, but also of the certificate of the Secretary of
which such copy is a part. That such was the legisla-
tive intent appears from two considerations: *First,* the
preceding part of the section requires that "*the same* shall
be recorded;" the words, "*the same,*" refer back to the
certificate and the copy which is a part of the certifi-
cate, so that the certificate and the copy accompanying
it are both required to be recorded; and it would be a
violent presumption to suppose, that the legislature
intended to make the recording of the copy only a con-
dition precedent to corporate organization and to the
transaction of corporate business, when it gave direc-
tions for the recording of both the certificate and the
copy at the same time; *second,* as "a copy of all papers,"
etc., is made a part of the certificate and the latter is
"duly authenticated under his hand and seal," the certi-
ficate and the copy attached to it constitute one docu-
ment, and are recorded as one document, so that the
separate use of the copy without the certificate could
not have been within the contemplation of the section.
The words, "upon the recording of said copy," are, there-
fore, to be understood as though the words, "certificate
and," had been inserted, so as to make the clause read:
"upon the recording of said *certificate and* copy." This
interpretation is in accordance with an established rule
of statutory construction, which has been thus expressed:
"If in any law we find the omission of something essen-
tial to it, or which is a necessary result of its provisions
and requisite to give the law its full effect, we may sup-
ply what is wanting, but not expressed, and extend the
law to what it was manifestly intended to embrace, but
in its terms does not include." (Potter's Dwarris, 140,
141; 23 Am. & Eng. Ency. of Law, p. 419, note 1). As

illustrating the application of this rule of construction, a case arose in Massachusetts where a statute authorized an aqueduct company to take and use the waters of two ponds named and of a certain lake, and it was further provided therein, that nothing in the act should be construed to authorize the company "to raise the water of any of said ponds above high water mark, nor to drain any of them below low water mark;" and it was there held that the restriction applied to the lake as well as to the ponds. *Brickett* v. *Haverhill Aqueduct Co.* 142 Mass. 394.

Recurring to the statute as thus construed, we find, that only upon the recording of the certificate can the corporation "be deemed duly organized" and authorized to "proceed to business." In the face of this positive language of the statute, we cannot understand how a corporation assuming to be created under it can be legally organized as such, or how it can have any right to transact business, when the certificate of its complete organization has not been filed for record in the recorder's office, as directed. A corporation formed under a general statute has no other powers than those which are granted, either expressly or impliedly, by the provisions of such statute. If its right to be deemed duly organized and its authority to proceed to business are made to depend upon the recording of a certificate of organization, such right and authority are as much limited as though there had been an express prohibition. "A provision, that certain things shall be done to constitute a license or authority, is equivalent to an express prohibition against the license or authority unless those things shall be done." (*Diversey* v. *Smith*, 103 Ill. 378). "It is a maxim generally true, that, if an affirmative statute, which is introductive of a new law, directs a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner." (Potter's Dwarris on Stat. 72).

In *Diversey* v. *Smith, supra,* an act to incorporate insurance companies required certain certificates to be made and filed, and then, in its eighth section, provided, that the Auditor should "thereupon deliver to such company a certified copy of the charter and of said certificates, which, on being filed in the office of the clerk of the county where the company is to be located, shall be their authority to commence business and issue policies;" and in that case we said (p. 388): "It thus conclusively appears, that until after the Auditor of Public Accounts shall have delivered to the company the certified copy of the charter and certificates, and the company shall have filed them in the office of the proper county clerk, there is no authority whatever for the company to commence business and issue policies, and any attempt on its part to do so before, is in direct violation of the statute."

Again in *Gent* v. *Manufacturers and Merchants' Ins. Co.* 107 Ill. 652, in discussing the provisions of the same Insurance act which was under consideration in *Diversey* v. *Smith, supra,* we said (p. 658): "That a corporation should have a full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business would seem to be self-evident. * * * Until organized as authorized by the charter there is not a corporation, nor does it possess franchises or faculties for it or others to exercise, until it acquires a complete existence. * * * This statute only authorizes the company to transact business upon filing the certificate of the Auditor of Public Accounts with the proper county clerk. The transaction of business in the name of the corporation before that certificate shall be thus filed is unauthorized." (See, also, *Bigelow* v. *Gregory,* 73 Ill. 197; *Cresswell* v. *Oberly,* 17 Ill. App. 281; *Ricker* v. *Larkin,* 27 id. 625; *Mokelumne Hill Mining Co.* v. *Woodbury,* 14 Cal. 424; *Norfolk* v. *American Steam Gas Co.* 113 Mass. 160; *Nickerson* v. *Wheeler,* 118 id. 295).

The full and complete organization of a corporation under section 4 of the Incorporation act of this State, and its right to exercise corporate powers, depend upon the recording of the certificate of complete organization issued by the Secretary of State in the recorder's office of the proper county, as mentioned in that section.   A performance of the requirement, that such certificate be so recorded, is essential; and, until it has been performed, the corporation will have no right whatever to assume corporate franchises or exercise corporate powers. (1 Morawetz on Private Corp.—2d ed.—sec. 27).

*Second*—One of the objects of section 18 of the Incorporation act is to secure an observance of the requirement in regard to the recording of the certificate in the proper recorder's office as contained in section 4, as well as to secure a compliance with the other provisions of the act.   Section 18 provides, that, if the officers or directors, of any stock corporation, real or pretended, shall assume to exercise corporate powers without complying with the provisions of the act, they shall be jointly and severally liable for all debts and liabilities made by them and contracted in the name of such corporation.   Section 18 also provides, that the officers and directors shall be charged with the liability mentioned, if they shall assume to exercise corporate powers, or use the name of the corporation, "before all stock named in the articles of incorporation shall be subscribed in good faith."

In the grammatical construction of section 18 the two clauses: "without complying with the provisions of this act," and "before all stock named in the articles of incorporation shall be subscribed in good faith;" both qualify the clause: "shall assume to exercise corporate powers, or use the name of any such corporation or pretended corporation."   That is to say, section 18 is a double sentence, or contains two sentences.   The first sentence is as follows:

"Sec. 18. If any person or persons being, or pretending to be, an officer or agent or board of directors of any

stock corporation or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation or pretended corporation, without complying with the provisions of this act, * * * then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation or pretended corporation."

The second sentence is as follows:

"Sec. 18. If any person or persons being, or pretending to be, an officer or agent or board of directors of any stock corporation or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation or pretended corporation, * * * before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation or pretended corporation."

The second of the two clauses mentioned cannot qualify the first, so as to make the section mean, that the officers, etc., will be liable, if they shall assume to exercise corporate powers, etc., "without complying with the provisions of this act before all stock named in the articles of incorporation shall be subscribed in good faith;" because, if the officers, directors, etc., were required to comply with the provisions of the act before the stock was subscribed, they could only comply with such provisions as precede the subscriptions for stock. This would be absurd; as the most important provisions, such as those relating to the meeting of the subscribers, the report of the commissioners, the issuance of the certificate of the Secretary of State and the recording of it in the recorder's office, all follow, and are subsequent to, the subscriptions to the capital stock. Moreover, as the act requires the license to issue, the books for subscription to be opened, the capital stock to be fully subscribed, notice to be given to the subscribers, a meeting of the

subscribers to be held, and an election of directors to be had by such subscribers, the directors do not exist, or come into being, until after the stock has been subscribed. It would be ridiculous to require the directors to themselves comply with provisions, the performance of which necessarily precedes and antedates their own official existence.

Nor would the section be of much utility if the word, "*and*," was supplied and inserted between the two clauses in question. In such case, the officers, directors, etc., would be liable, if they assumed to exercise corporate powers, etc., without complying with the provisions of this act *and* before all stock, etc., shall be subscribed in good faith. If this were the meaning, then the liability would be avoided if all stock, etc., should be subscribed for in good faith, even though the other provisions of the act were not complied with, or, if there was a formal compliance with such other provisions even though all the stock was not subscribed for in good faith; in other words, the liability would not attach, unless there was failure to see to it, that the stock was subscribed for in good faith, and also failure to comply with the other provisions of the act. We do not think, that such construction could have been within the legislative intention.

Statutes should be so construed as to give them a reasonable meaning, and should not be so interpreted as to lead to absurd consequences. "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests." (Sutherland on Stat. Const. sec. 324; Endlich on Int. of Stat. sec. 295).

We think, that the proper construction of section 18 requires full force and effect to be given to each of the two sentences therein contained, as the same are above set forth. That is to say, the liability therein named is imposed upon the persons therein named, if they assume

to exercise corporate powers, or use the name of the corporation, without complying with the provisions of the act; such liability will also be imposed upon said persons, if they assume to exercise corporate powers, or use the name of the corporation, before all stock named in the articles of incorporation shall be subscribed in good faith. Either of two delinquencies will result in making the parties liable, namely, non-compliance with the provisions of the act, or non-subscription in good faith for all stock named in the articles of incorporation. In other words, the only construction of section 18, which will give it any reasonable effect or intelligent meaning, is that which requires the insertion of the word, "or," between the two clauses in question; so that the reading will be: "without complying with the provisions of this act, *or* before all stock named in the articles of incorporation shall be subscribed in good faith." To thus give effect to a statute by supplying a missing word is justified by the rule of construction already announced.

In construing a statute the cardinal rule is to ascertain the intention of it. The ascertainment of the intention is the aim and object of all construction. Where the real design of the legislature in passing a statute or a particular section thereof, can be perceived with reasonable certainty notwithstanding the want of precision in the language used, such language must be so construed as to carry that design into effect, even though the interpolation of other words may be necessary. (Endlich on Int. of Stat. secs. 295, 298). "When the intention can be collected from the statute, words may be modified, altered or *supplied*, so as to obviate any repugnancy or inconsistency with such intention." (Sutherland on Stat. Const. sec. 218; 23 Am. & Eng. Ency. of Law, p. 419; *Philadelphia* v. *Ridge Avenue Pass. Railway Co.* 102 Pa. St. 196).

What, then, was the intention of the legislature in adopting section 18, which will be made manifest by the insertion of the word, "or," between the clauses in ques-

tion?   The intention was to secure the public, dealing
with corporations, against the evils of illegal or incom-
plete organization, and fictitious or bogus subscriptions,
by placing upon the managing officers or directors the
responsibility of seeing to it, that the provisions of the
Incorporation act shall be fully complied with, and that
the subscriptions to the capital stock shall be made in
good faith.

Under the provisions of the statute, the directors are
elected by the stockholders or subscribers to the capital
stock.   The board of directors are authorized to exercise
the corporate powers, to adopt by-laws for the govern-
ment of the officers and affairs of the corporation, to
require bonds with security from its officers and agents,
to remove such officers when the corporate interests re-
quire it, to determine in what installments and at what
times the subscriptions to the capital stock shall be pay-
able, etc.   As their powers are thus great, and they stand
forth as the representatives of the corporation in its deal-
ings with third persons, it is right and proper, that they
should be required to have behind them a legally organ-
ized corporation and a *bonâ fide* subscription list.   The
subscriptions to the capital stock constitute the main
assurance, which the public have, that the corporation is
pecuniarily responsible.

The act provides, that commissioners shall open books
for subscriptions to the capital stock, and that, as soon
as may be after such stock is fully subscribed, the sub-
scribers shall meet and elect directors who shall exercise
the corporate powers.   The act does not contemplate,
that there shall be one kind of subscriptions to the cap-
ital stock before the directors are elected, and another
kind after they are elected.   But it is nevertheless true,
that the provisions of the act, which precede section 18,
furnish very inadequate guarantees as to the responsi-
bility of the stockholders.   The capital stock is not re-
quired to be paid in cash, but only to be subscribed.

What is to prevent the making of subscriptions by impe-
cunious and irresponsible parties? No provision is made
for examination as to the financial ability of the sub-
scribers. But there is provision made in section 18 for
careful investigation by the managing officers and direct-
ors. They are required to see to it, that all stock named
in the articles of incorporation shall be subscribed in
good faith. This special duty is not embraced in the
previously specified general duty of compliance with the
provisions of the act, because the rule is, that "the spe-
cial mention of one thing indicates that it was not in-
tended to be covered by a general provision which would
otherwise include it." (Endlich on Int. of Stat. sec. 299).
"Where, therefore, there is, in the same statute a particu-
lar enactment, and also a general one, which, in its most
comprehensive sense, would include what is embraced in
the former, the particular enactment must be operative,
and the general enactment must be taken to affect only
such cases within its general language as are not within
the provisions of the particular enactment." (Ibid.) The
articles of association, while they are *prima facie* evidence
that all the stock has been subscribed, (*Jewell* v. *Rock River
Paper Co.* 101 Ill. 57), are not conclusive evidence that all
the subscriptions are made in good faith. The articles
of incorporation consist of the statement, the license, the
report of the commissioners, the certificate of organiza-
tion, (*People* v. *Chicago Gas Trust Co.* 130 Ill. 268), and in-
clude a list of the subscribers. The directors should be
certain, that the list is a list of *bonâ fide* subscribers before
they begin to exercise the corporate powers. It is also
right and proper that, before they assume corporate
powers, they should comply with the requirement that
the certificate, containing a copy of the list of subscrib-
ers, shall be recorded in the proper office, so that third
persons may know who the subscribers are.

It is not necessary to consider the question, whether,
in case they discover that all the stock was not sub-

scribed in good faith, they can accomplish a revocation of the license or an amendment of the certificate. It is sufficient that, in such case, they can refuse to exercise corporate powers, or, if they exercise such powers, can assume the liability imposed by section 18.

The provision, requiring a compliance "with the provisions of this act" as a condition precedent to the assumption of corporate powers, is violated by a neglect to comply with any one of the provisions of the act not mentioned in the special clause, such as recording the certificate. It is not necessary, that there should be a non-compliance with all the provisions in order to incur the liability. Such a requirement would be unreasonable. In arriving at the true construction of a doubtful statute, the intention which appears to be most agreeable to convenience, reason and justice, will be presumed to be the true one. (Endlich on Int. of Stat. sec. 245; 23 Am. & Eng. Ency. of Law, p. 358). And, so, it has been held, that a statutory provision forbidding the granting of new trials for "any of the following reasons," means, for "any *one* of the following reasons." (*Thurston* v. *State*, 3 Coldw. (Tenn.) 115; Endlich on Int. of Stat. secs. 249, 299).

The case of *Tarbell* v. *Page*, 24 Ill. 46, is distinguishable from the case at bar upon grounds which are clearly stated in *Bigelow* v. *Gregory*, 73 Ill. 197, and need not be here repeated. The case of *Bushnell* v. *Consolidated Ice Machine Co.* 138 Ill. 67, is also distinguishable from the present case. In the *Bushnell case*, the material point decided was, that one, who took part in the organization of a corporation, and was elected and acted as its secretary and general agent, could not treat it as a partnership, and compel his fellow corporators to account to him on that basis; and it was there said (p. 75): "It is wholly unnecessary, however, in this case to determine when and under what circumstances third parties may proceed against incorporators acting under a defective or imperfect organization, as individuals or co-partners."

*Third*—It is claimed, that the defendant in error is estopped from seeking to enforce the liability mentioned in section 18, because he dealt or contracted with the "Q. W. Loverin Company" as a corporation *de facto*, and because he filed his claim with the assignee, to whom the company had made an assignment for the benefit of its creditors under the Voluntary Assignment act.

The language of section 18 precludes the idea, that an estoppel can be created against a creditor by reason of his dealing or contracting with the corporation. That section provides, that the officers or directors "shall be jointly and severally liable for all debts and liabilities made by them and contracted in the name of such corporation or pretended corporation." This language presupposes a contract between the creditor and the directors or officers in the name of the corporation. A contract must be between two parties. If the debt or liability was made in the name of the corporation, it must have been made with the creditor, in whose favor the debt or liability was incurred. To say that the creditor is estopped from suing the officers and directors because he contracted with the corporation or pretended corporation is to make the provision in his favor entirely nugatory. Section 18 imposes the liability upon the officers and directors, because, being prohibited from proceeding to business, they permit business to be commenced and liabilities to be incurred in violation of their duty. The creditor's right of recovery is totally unaffected by any actual loss or injury he may have sustained by the failure or neglect of the officers or directors. (*Diversey* v. *Smith, supra; Nickerson* v. *Wheeler, supra*). He is entitled to recover, if he shows that he is a creditor—that the defendants are such officers, agents or directors as are mentioned in section 18, and that one of the provisions of the act, such as the requirement to record the certificate, has not been complied with, or that all stock named in the articles of incorporation has not been subscribed in good faith.

There was no estoppel by reason of contract with the pretended or incomplete corporation.

Nor was there any estoppel by reason of filing the claim with the assignee, especially as, according to the averment in the replication, an order of discontinuance was entered in the assignment proceeding, and thereby all parties were remitted, by force of the Voluntary Assignment law, to the same rights as existed at the date of the assignment. (1 Starr & Cur. p. 1307). It is to be observed, that there is a marked distinction between the case, where the suit is between the corporation and a stockholder, and the case of a suit by creditors against individuals assuming to act as agents or officers or directors of a corporation. In the latter case, it is the duty of such persons to prove, that their principal had a legal existence and was capable in law of contracting the debt for which they are sought to be held liable. (*Bigelow* v. *Gregory, supra*; *Diversey* v. *Smith, supra; Hurt* v. *Salisbury*, 55 Mo. 310; *Richardson* v. *Fitts*, 71 id. 128; *Martin* v. *Fewell*, 79 id. 410; *East Pascagoula Hotel Co.* v. *West*, 13 La. Ann. 545).

*Fourth*—The present action is properly brought as an action at law, as the remedy under section 18 is at law and not in equity. The object of the statute is to inflict a punishment for its violation. It is, therefore, penal in its character. (*Diversey* v. *Smith, supra*). Hence, the suit cannot be in equity, as equity does not enforce penalties. "When the statute creates a liability, the remedy is invariably at law, unless the statute provides for proceedings in equity." (*Lane* v. *Nickerson*, 99 Ill. 284; *Wincock* v. *Turpin*, 96 id. 135; *Eames* v. *Doris*, 102 id. 350; *Grund* v. *Tickler*, 5 Kan. 49; *Hill* v. *Frazier*, 22 Pa. St. 320; *Jones* v. *Barlow*, 62 N. Y. 204.

*Fifth*—Independently of section 18, it is the law, that a company, which is not a corporate body, is "a partnership, composed not merely of the directors, but of all the subscribers to the articles of association who had not withdrawn." (*Coleman* v. *Coleman*, 78 Ind. 344; *Bigelow* v.

*Gregory,* 73 Ill. 197; *Hurt* v. *Salisbury,* 55 Mo. 310). "If a corporation be illegally formed, its members or stockholders are liable as partners for its acts or contracts; and directors, officers and agents, acting and contracting in its name, render themselves personally liable." (1 Beach on Private Corp. sec. 16).

The judgments of the Appellate and circuit courts are affirmed.　　　　　　　　　　　　　　*Judgment affirmed.*