## Critchfield and Company, Appellee, v. A. Watson Armour et al., Appellants.

### Gen. No. 27,860.

1. FOREIGN CORPORATIONS—*liability of directors, officers and agents as partners to creditors for unauthorized acts.* Directors, officers and agents of a *de jure* foreign corporation for profit, doing business in Illinois without lawful authority, are individually liable as partners for debts incurred in the name and on behalf of the corporation by them for services rendered and expenses incurred in performance of a contract between them and plaintiff, plaintiff having dealt with them in ignorance of the fact that such corporation had not complied with the legal prerequisites to a foreign corporation doing business in Illinois.

2. FOREIGN CORPORATIONS—*what constitutes "doing business."* A foreign corporation for profit is shown to have been "doing business" in Illinois without lawful authority at the time its directors, officers and agents entered into a contract with plaintiff for services to be rendered to such corporation, where the evidence shows that although they maintained a statutory office for stockholders' meetings in the foreign State, they were then holding directors' meetings, selling corporate stock and maintaining an active bank account in Illinois, were there working out an advertising campaign and merchandising policy for the sale of a patented product to be there manufactured, had taken a lease on factory premises, and received an assignment of the invention for which letters patent had been applied and under which the product was to be manufactured and had purchased supplies and machinery and fixed the price at which the product would be sold, and intended to commence active manufacture and sale as soon as possible.

3. FOREIGN CORPORATIONS—*dealing with unauthorized foreign cor-*

*poration as estoppel to hold directors, officers and agents individually liable.* Plaintiff is not estopped to hold directors, officers and agents of a *de jure* foreign corporation for profit individually liable as partners for services rendered to and money expended for the benefit of such corporation under a contract entered into with such directors, officers and agents in ignorance of the fact that it had no legal authority to do business in Illinois, by the fact that it dealt with the corporation as such.

4. FOREIGN CORPORATIONS—*notice to creditor that corporation not licensed in Illinois as defense to action against directors individually.* In an action to hold directors, officers and agents of a foreign corporation which was not licensed to do business in Illinois individually liable as partners for services rendered and money expended by plaintiff for the benefit of such corporation under a contract entered into with defendants on behalf of the corporation, it is immaterial to plaintiff's right of recovery whether it entered into the contract with or without knowledge that such corporation was not licensed to do business in Illinois.

5. FOREIGN CORPORATIONS—*when remedy against directors individually not waived by dealings with unlicensed corporation.* Plaintiff did not waive its right to hold directors, officers and agents of an unlicensed foreign corporation individually liable as partners; for a debt incurred by them under a contract with plaintiff for services to the corporation by accepting payments from the corporation as such after it had notice that the corporation was not authorized to do business in Illinois.

Appeal by defendants from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed February 13, 1923. *Certiorari* denied by Supreme Court (making opinion final).

GARNETT & GARNETT and WETTEN, PEGLER & DALE, for appellants; EUGENE H. GARNETT, CHARLES H. PEGLER and ALVIN E. STEIN, of counsel.

ROSENTHAL, KURZ & HOULIHAN, for appellee; JAMES ROSENTHAL and SIDNEY LEVY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On July 5, 1917, plaintiff commenced a first-class

action in assumpsit in the municipal court of Chicago against the above-named defendants, as officers, directors and agents of the Tireoid Company, a corporation for profit organized under the laws of the State of Maine. Other parties were originally made codefendants, but the action was dismissed as to them. Following a trial without a jury the court, on March 22, 1922, found the issues against the defendants, assessed plaintiff's damages at $15,710.50, and entered judgment in that amount against them and they appealed.

It is alleged in plaintiff's statement of claim in substance that, during the years 1916 and 1917, defendants, as officers, directors and agents of the Tireoid Co., were doing business in Illinois in the name of the Tireoid Co. and in violation of the act of the Illinois legislature then in force relative to foreign corporations for profit; that during said years plaintiff expended certain moneys and performed certain services, to the amount claimed, for the defendants at their request in the name of the Tireoid Co. in Illinois; and that plaintiff did not at any time know that the Tireoid Co. was not legally authorized to transact business in Illinois until after said moneys had been expended and said services performed. As appears from the affidavit of merits, the defenses were in substance (1) that the moneys were expended and the services performed under an agreement between plaintiff and the Tireoid Co. made prior to July 1, 1916, and at a time when the Tireoid Co. was not doing business in Illinois; (2) that at the time said agreement was made, and said moneys expended and services performed, plaintiff knew that the Tireoid Co. was not legally authorized to do business in Illinois under said act; (3) that the indebtedness of the Tireoid Co. to plaintiff under said agreement originally exceeded $25,000 and was reduced from time to time by payments which were accepted by

plaintiff, and thereby plaintiff is estopped to contend that said agreement is not that of the corporation; and (4) that after plaintiff had threatened to sue defendants on their alleged individual liability, it accepted from the corporation payments on account, whereby it waived any right of action against the defendants, if any it had.

The case was tried on a stipulation of facts, supplemented by other evidence. It was stipulated in substance that plaintiff, an Illinois corporation, was during said years engaged in business in Chicago as advertising and merchandising agents; that the Tireroid Co. was legally organized in Maine on March 14, 1916, for the purpose of manufacturing and selling "Tireoid," a composition to prevent punctures in automobile tires, but that it never complied with the act of the legislature of Illinois, in force July 1, 1905, regulating the admission of foreign corporations for profit to do business in this State; that it had no office or place of business in Maine, except a statutory office where stockholders' meetings were held, and had no place of business in Illinois until July 1, 1916, when it occupied premises at 1200 Michigan Avenue, Chicago, under a written lease executed by it, dated May 18, 1916, for a term beginning July 1, 1916; that at and prior to the time the agreement with plaintiff was made, June 9, 1916, its directors' meetings were held in Chicago in the office of W. L. Rohrer, an officer and director; that on and after July 1, 1916, for a period of several months, it occupied said premises on Michigan Avenue, Chicago, there manufactured "Tireoid," there received all orders for and distributed its said product, and there conducted its entire business; that at a meeting of its board of directors, held in Rohrer's office on May 9, 1916, a committee, consisting of defendants Markle, Levy and Price, was appointed to "work out an advertising program and

merchandising policy"; that at a meeting of said board, held in Rohrer's office on June 9, 1916, a written proposition, signed by plaintiff by Stanley Clague, its then vice president, and addressed to the "Board of Directors of the Tireoid Company," was personally presented by Clague; that this proposition related to a comprehensive advertising campaign, advertising "Tireoid," to be conducted by plaintiff for the benefit of the Tireoid Co., and involved the advancement of large sums of money and the performing of services by plaintiff and at a total estimated cost of about $35,000; that a day or two before, the details of the proposition had been discussed by Clague and the committee; that at said meeting the proposition was further discussed and it was finally decided to accept it; that the agreement was subsequently ratified at a meeting of said board of directors, held at the Michigan avenue premises on July 6, 1916, at which all of the defendants were present; that subsequently plaintiff performed its part of the agreement, made the advancements and performed the services contemplated, and from time to time received payments on account, according to bills which it rendered to the Tireoid Co.; that these payments were made by checks of the Tireoid Co., drawn on a Chicago bank, and the checks were cashed, leaving a balance due plaintiff of $15,710.50; that plaintiff at no time rendered any bills to any of the defendants, except that on June 20, 1917, plaintiff's attorneys wrote each director, calling attention to the balance then due, to the fact that the Tireoid Co. had never been legally authorized to do business in Illinois, and to the individual liability of the directors, under a recent decision of the Supreme Court of Illinois; that up to June 1, 1916, the total cash resources of the Tireoid Co. were about $20,000, all resulting from the sale of its stock, which resources on July 31, 1916, had been increased about $7,000 by further sales of stock; and that during the months

of June and July, 1916, the company had no assets, except its formulas and patents, the proceeds of said stock sales, and certain machinery, fixtures and merchandise purchased with a part of the proceeds of said stock sales.

It further appeared that the Tireoid Co., after July 1, 1916, manufactured and sold "Tireoid" at and from the Michigan avenue premises, and there conducted its entire business, until the spring of 1917, when it ceased doing business and sold its assets; that an insufficient sum was realized to pay its debts; that its directors made contributions and all claims against it, except said balance due plaintiff, were paid or settled; that on June 25, 1917, and on July 2, 1917, it forwarded to plaintiff its checks for $367.60 and $175, respectively, as payments on account; and that plaintiff cashed these checks and at the same time wrote letters to the treasurer of the Tireoid Co., to the effect that by the acceptance of the checks it was not waiving its claim against said defendants, as directors, on their said individual liability.

Among the cases relied upon by counsel for plaintiff to sustain the present judgment is *Ryerson & Son v. Shaw,* 277 Ill. 524, opinion filed in February, 1917. The plaintiff in that case sought to hold certain defendants, as officers, directors and agents of a *de jure* Maine corporation for profit, doing business in Illinois without lawful authority, liable for certain merchandise which the plaintiff had sold and delivered to them at their request, in the name of the corporation, in Illinois. Two of the defendants defended on the grounds that they were not individually liable as such officers and agents, and that the plaintiff, having dealt with the corporation in its corporate capacity in Illinois, was estopped from questioning the legal existence of the corporation. On the trial the plaintiff tendered certain propositions of law, among them the third proposition as follows: "The plaintiff offers as a proposition of law that in a suit

by a creditor against agents or officers or directors of a corporation or pretended corporation, either domestic or foreign, which has failed to comply with the provisions of the law to enable such corporation or pretended corporation to transact business in this State, such agents or officers or directors are jointly and severally liable *as partners* for the goods and merchandise sold and delivered to and in the name of such corporation or pretended corporation." This proposition was refused and the trial court, having found the issues for said defendants, entered judgment in their favor. On appeal this Appellate Court affirmed the judgment (201 Ill. App. 445), holding as a matter of law that said defendants were not liable, but the Supreme Court on further appeal reversed the judgments and remanded the cause. In its opinion, after referring to the refusal of said proposition of law, the Supreme Court says (p. 528): "The question whether the court erred in its refusal depends upon whether directors, officers and agents of a foreign corporation who do business in this State in the name of the corporation without lawful authority are personally liable for the debts they contract." This main question is fully discussed in the opinion and many cases decided in this and other States are referred to. At the commencement of the discussion the court states (p. 529) that it is admitted that the corporation was legally organized in the State of Maine and that "the question whether it was a corporation *de jure* or not is in no way involved in the case." After referring to the cases of *Bigelow v. Gregory,* 73 Ill. 197; *Loverin v. McLaughlin,* 161 Ill. 417; and *Hill v. Beach,* 12 N. J. Eq. 31, in which certain individuals trading under a corporate name were treated as partners, the court says (p. 532): "It seems that the same rule ought to be applied to directors and officers of a foreign corporation prohibited from doing business in this State

where they participated in making contracts void by our law, and it has been applied in several cases in other jurisdictions.'' The court then refers to the decisions in *Lasher v. Stimson,* 145 Pa. St. 30; *Raff v. Isman,* 235 Pa. 347; and *Taylor* v. *Branham,* 35 Fla. 297, and says in conclusion (p. 533): ''These decisions are in harmony with general principles and seem to us correct, from which it follows that the court erred in refusing to hold the third proposition of law.''

In the case of *Inter-Ocean Newspaper Co. v. Robertson,* 296 Ill. 92, decided in December, 1920, it is held in substance that the *stockholders* of a *de facto* corporation who have in good faith attempted to incorporate under a valid law and have honestly transacted business as a corporation are not liable as partners to persons dealing with the *de facto* corporation, in the absence of an express statute declaring such liability. While in this case certain expressions used in *Loverin v. McLaughlin,* 161 Ill. 417 (cited in the *Ryerson* case, *supra*) are disapproved, we do not understand that the holdings in the *Ryerson* case, relative to the liability of *officers, directors* and *agents* of a foreign *de jure* corporation doing business in this State without lawful authority, have been changed or modified.

The main ground relied upon by counsel for defendants for a reversal of the judgment is that the Tireoid Co. was not doing business in Illinois in violation of the statute when the agreement in question was made on June 9, 1916. While counsel admit that the company was doing business in Illinois in violation of the statute *after* July 1, 1916 their argument is in substance that what the company did up to and including June 9, 1916, when said agreement was made, amounted merely to acquiring the instrumentalities for doing future business, and not to *doing* business within the meaning of the statute. It ap-

pears from the stipulation and other evidence that prior to June 9, 1916, the company had held directors' meetings in Chicago; and sold some of its capital stock and received payment therefor in Chicago; had opened a bank account in a Chicago bank and had deposited money and drawn checks on the fund; had adopted a system of voucher checks; had appointed a committee of its directors to work out an advertising campaign and merchandising policy; had executed a lease of premises on Michigan avenue in Chicago, for a term to begin on July 1, 1916, for the purpose of there manufacturing and selling its product, "Tireoid," and had paid the first month's rent; had received an assignment of an invention for which letters patent of the United States had been applied for and under which it was expected its product would be manufactured; had experimented with a filling device to be used in connection with its proposed product; had purchased supplies and ordered a mixing machine and certain cans; and had determined the price at which it would sell its product and that it would conduct its business in and from Chicago. And on June 9, 1916, the agreement in question was made in its name with plaintiff. We are of the opinion that these acts, coupled with the manifest intention on the part of the company's officers and directors to proceed as soon as possible with the manufacture and sale of the company's product in and from Chicago, constituted doing business in the State of Illinois within the meaning and intent of the statute. While it has been held in this State (*Alpena Portland Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 354; *Plew v. Board*, 274 Ill. 232), and in other jurisdictions, that single or isolated transactions do not constitute doing business within the meaning of such statutes, we believe it to be the law that, where in such transactions the action of the foreign corporation is such as indicates a purpose to

continue to engage within the State in the doing of a part or all of its ordinary business, such corporation must be held to be doing business in the State within the meaning of such statutes. (14a Corpus Juris, 1273-4; *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727; *Stegall v. American Pigment & Chemical Co.,* 150 Mo. App. 251; *International Text-Book Co. v. Lynch,* 81 Vt. 101; *Neyens v. Worthington,* 150 Mich. 580; *John Deere Plow Co. v. Wyland,* 69 Kan. 255; *Lowenmeyer v. National Lumber Co.,* 71 Ind. App. 458, 464.) In the *Lowenmeyer* case, the single transaction of the unlicensed foreign corporation was the purchase by it of certain real estate for the purpose of using the same in conducting its business in a city in Indiana, followed by such use. The contention was made, practically the same as here urged, that such act of purchase was only *preliminary* to doing the business contemplated by the corporation, but the court held that the corporation was doing business within the meaning of the Indiana statute. In the present case many acts were done in this State in the name of the Tireoid Co. prior to June 9, 1916, which not only clearly indicated the intention of the company to transact its entire business in the near future in and from Chicago, but which also in themselves, we think, amounted to doing business in Illinois within the meaning of the statute.

Counsel for defendants also contend that plaintiff, by dealing with the Tireoid Co. as a corporation, is estopped to urge that said agreement of June 9, 1916, was not the agreement of the corporation. We do not think that there is any merit in the point. Substantially the same contention was made in the *Ryerson* case, *supra,* and in discussing the question the Supreme Court says (p. 530):

"It is true that a foreign corporation, when sued, is estopped from making the defense that it had no lawful authority to do business or make the contract

out of which the cause of action arises, but that is equally true of a domestic corporation *de facto* although it has not become a corporation *de jure,* and the estoppel in either case does not determine the question of the personal liability of those participating in the business or making the contract. By the application of the ordinary principles of law, where a statute provides that any violation of its requirements shall be a misdemeanor any contract in violation of the statute is void, and while a foreign corporation is estopped to deny the validity of its contract, the estoppel is not mutual, and the other party to the contract is not estopped to deny its validity and to assert his rights. (*Parke, Davis & Co. v. Mullett,* 245 Mo. 168; *American Amusement Co. v. Eastlake Chutes Co.,* 174 Ala. 526, Ann. Cas. 1914a, 709.) The statute prescribes a penalty of not less than $1,000 and not exceeding $10,000 for neglect or failure to comply with the provisions of the act, and this penalty may be enforced against the corporation, but the liability of the corporation to that penalty does not affect the question whether individual rights may be enforced against directors, officers and agents who incur liabilities or make contracts in the name of the corporation."

In the case of *Parke, Davis & Co. v. Mullett,* cited in said *Ryerson* case, it is said (p. 176, quoting from *Osborne & Co. v. Shilling,* 74 Kan. 677):

"Another reason why the defendants are not estopped is that the statute was enacted for the benefit of the general public, and its purpose cannot be bargained away by individuals. The regulation of foreign corporations is for the purpose of subjecting them to inspection, so that their condition, standing and solvency may be known—the same sort of inspection to which domestic corporations are subjected. Another purpose, likewise intended for the protection of the public, was to subject foreign corporations to the jurisdiction of the courts of the State; and an incidental purpose was to provide revenue. Involved in the statute are these public considerations, which are of greater consequence than

mere individual rights. It was not for defendants' sake, therefore, that the provision was made, but it is a rule of State policy of which the defendants may incidentally take advantage.''

And in the case of *American Amusement Co. v. Eastlake Chutes Co.,* 174 Ala. 526, also cited in the *Ryerson* case, it is said (p. 530):

''The opinion of the defendant's attorney that the plaintiff need not file any papers in Alabama before doing the stipulated work, though expressed to plaintiff's agent in the presence of the defendant's agent, could not estop the defendant from invoking the application of the laws here considered; nor could such an opinion, whether deceitfully or honestly expressed, though it were accepted and acted on in good faith, excuse the plaintiff from the performance of the public duties enjoined upon it by law.''

Counsel further contend that the defendants, as directors and agents of the Tireoid Co., are not individually liable, for the reason that plaintiff at the time the agreement was made *knew* that the Tireoid Co. was not legally authorized to do business in Illinois. Plaintiff, in its statement of claim, alleged that it did not have such knowledge until after it had advanced the moneys and performed the services contemplated in the agreement. As we view it, this allegation of plaintiff's lack of knowledge at such time was not necessary to the stating of a good cause of action against the defendants. If such knowledge in plaintiff at the time can be considered as a good defense to the action, it is an affirmative defense for the defendants to allege in their affidavit of merits and to prove upon the trial. They so alleged it and attempted to prove it. The defendants H. H. Merrick and James Levy and W. L. Rohrer (an officer and director of the company who opposed the making of the agreement) all testified at length as to what happened at the meeting of the directors at Rohrer's office in Chicago on June 9, 1916 (when Clague, then

vice president of plaintiff, presented plaintiff's said written proposition, signed by him in its name, and said proposition was fully discussed and the decision made to accept it), and that at said meeting Clague was informed that the Tireoid Co. was not qualified to do business in Illinois. On behalf of plaintiff in rebuttal, Clague, who at the time of the trial was managing director of another company, testified in substance that at said meeting he presented the proposition, urged its acceptance, left the meeting, was not present during any discussion of the proposition, but later returned and was informed it had been accepted; that at that time he was not informed and did not know that the Tireoid Co. was not legally authorized to do business in Illinois; and that neither he nor plaintiff was informed of the fact until several months later and after the Tireoid Co. had defaulted in its payments, when investigations of plaintiff's credit department elicited the fact. At the close of the hearing the court refused several requested findings of fact presented by the respective attorneys, and of its own motion made the following finding of fact: "The court finds that there is no preponderance of evidence tending to show that the plaintiff at the time of the making of the contract by and with the defendants, on behalf of the Tireoid Co., knew that the Tireoid Co. was not licensed to do business in the State of Illinois." And the court thereupon found the issues against the defendants and entered the judgment appealed from. We cannot say, after a careful consideration of all the evidence, that either the court's finding as to plaintiff's said knowledge or its general finding is manifestly against the evidence. Much argument is here presented by defendants' counsel on the question of the burden of proof, the contention being that it devolved upon plaintiff to show that when it entered into said agreement it did not know that the Tireoid Co. was

not licensed to do business in Illinois, and that plaintiff failed to sustain the burden.    As before stated, if plaintiff's knowledge at the date of the agreement that the Tireoid Co. was not so licensed can be considered as a good defense to the action, we think that the burden of showing such knowledge in plaintiff was upon the defendant, which burden they failed to sustain by a preponderance of the evidence as the trial court found, and we are further of the opinion that these questions of knowledge in plaintiff, and where the burden of proof lies, are immaterial.    It is stated in the opinion of the *Ryerson* case (p. 531): "The general rule is, that a person who assumes to act as agent for a legally incompetent principal renders himself personally liable to the person with whom he deals, *unless* such person knows of the want of authority (31 Cyc. 1548), and one dealing with an officer or agent of a foreign corporation cannot be presumed to know that the corporation has not complied with the laws of the State."    But, as we read the opinion in the *Ryerson* case, the decision did not turn on the question whether the plaintiff in that case did or did not know that the corporation to whom the goods were sold was not licensed to do business in Illinois, but rather on the fact that the defendants contracted the indebtedness in Illinois in the name of a foreign corporation not authorized to do business in Illinois, and hence were personally jointly and severally liable "as partners" for such indebtedness.    In the case of *Cunnynham v. Shelby,* 136 Tenn. 176, 181, it is said:    "The fact that defendants in error dealt with them in their corporate name can avail them nothing.    *    *    *    It does not appear that defendants in error knew that the corporation had not complied with the Tennessee laws.    However, we do not think this would make any difference, since the corporation was without the power of contracting, and as the plaintiffs in error

could not bind it, they necessarily bound themselves.''

Counsel further contend that, plaintiff having accepted moneys on account from the Tireoid Co. (viz., the company's checks of $367.60 and $175) after it knew that the company was not legally qualified to do business in Illinois, its right of action against the defendants as directors was waived. We cannot agree with the contention. In 20 Corpus Juris 33, it is said: ''Although acts prior to the actual commencement of legal proceedings indicate an intention to rely upon one remedial right, yet they do not constitute an election which will preclude the subsequent prosecution of an action or suit based upon an inconsistent remedial right, unless the acts contain the elements of an estoppel *in pais*.'' Under the facts disclosed we do not think that any estoppel can arise from plaintiff's acceptance of payment on account of said indebtedness from *any* source. Such acceptance did not injure the defendants or lead them to change their position. (*Guckert v. Hacke*, 159 Pa. St. 303, 28 Atl. 249, 250; *Thomas v. Taggart*, 209 U. S. 385, 392; *Merle & Heaney Mfg. Co. v. Hicks*, 178 Ill. App. 406, 409; *Bradner Smith & Co. v. Williams*, 178 Ill. 420, 427.)

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.